**H.D. OSBORNE, Appellee,**

v.

**IOWA NATURAL RESOURCES
COUNCIL, Appellant.**

No. 68766.

Supreme Court of Iowa.

July 20, 1983.

Thomas J. Miller, Atty. Gen., and Elizabeth M. Osenbaugh, Asst. Atty. Gen., for appellant.

Gordon K. Darling of Darling, Chickering & Darling, Winterset, and Jared O. Bauch, Traer, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

SCHULTZ, Justice.

This appeal arises from a landowner's failure to secure a permit from the Iowa Natural Resources Council (council) before engaging in certain floodplain construction. Osborne, the landowner, did make after-the-fact applications to the council and following a hearing the council ordered the applications granted subject to certain conditions. Osborne disagreed with the council's conditions regarding channel widening, relocation of a levee, and wildlife habitat. He petitioned for judicial review and following a hearing the district court set aside the council's orders. It held that the council lacked statutory authority to impose conditions for approval of the applications and that the council's only remedy was to seek abatement of the construction. The council appeals and we reverse.

The relevant events span approximately two decades. On June 1, 1968, Osborne wrote the council seeking permission to straighten Wolf Creek where it meandered through about forty acres of land he owned in Tama County. The council promptly advised him that a permit was required for any floodplain construction on Wolf Creek and further advised him on the necessary forms and procedures. In 1969, without filing an application or securing a permit, Osborne built a levee. He straightened the creek channel in 1977 and constructed an adjacent levee segment. All of this construction was within the creek's floodplain.

The council learned of this construction in 1977 and told Osborne to cease and to submit a permit application. In December 1977, after the attorney general sued Osborne to compel him to file an application, Osborne filed an application for approval of the channel straightening. In July 1979 Osborne filed a second application. This application was filed jointly with Broeker, a downstream neighbor, and sought a change in the alignment of the channel where Osborne's property adjoins Broeker's land. A

third application was an after-the-fact application made by Osborne to obtain approval of a levee change; this third application was filed at the council's request. It is these three permit applications which are the gravamen of this appeal. We shall consider them shortly.

First, however, we must determine whether we have jurisdiction to hear this appeal. Jurisdiction in this case depends upon whether the motion by the council to enlarge and amend the district court judgment pursuant to Iowa R.Civ.P. 179(b) was appropriate. The district court overruled the motion on the ground that it was inappropriate because there had been no trial of an issue of fact. If the motion was inappropriate, then the council's notice of appeal, which was taken more than thirty days after the entry of judgment, was late and this court is without jurisdiction. Iowa R.App.P. 5(a); *Budde v. City Development Board,* 276 N.W.2d 846, 849–50 (Iowa 1979). If the motion is appropriate, then the thirty-day period for filing the appeal was tolled. *Id.*

■ The threshold question is whether a rule 179(b) motion is appropriate on a judgment rendered on judicial review. We recently discussed in detail situations when a rule 179(b) motion is authorized and effective and we need not repeat our discussion here. *Kunau v. Miller,* 328 N.W.2d 529, 530 (Iowa 1983). In *Kunau* we indicated that, except as may be provided by separate rule, such a motion is restricted to a nonjury ruling on an issue of fact; however, we pointed out that the 1980 amendments to the Iowa Rules of Civil Procedure, particularly Iowa R.Civ.P. 333(c), extends the applicability of rule 179(b) to judicial review of contested agency action. *Id.* In agency adjudication other than a contested case rule 179(b) motions are limited to decisions in which the district court made a determination of fact. *State ex rel. Johnston v. Iowa Department of Social Services,* 328 N.W.2d 912, 913 (Iowa 1983). Although we have never expressly stated that rule 333(c) extends rule 179(b) motions in administrative review to all contested cases, we be-

lieve that this is the logical conclusion to draw from the language of rule 333(c) and our decisions in *Kunau* and *Johnston.*

■ Thus we hold that the district court erred in ruling that rule 333(c) does not authorize a rule 179(b) motion where the ruling on judicial review of a contested case resolves only questions of law. Accordingly, we hold that we have jurisdiction.

In his petition for judicial review filed in the district court Osborne generally claimed relief from the agency action on grounds that (1) the agency action violated and was in excess of Iowa Code chapter 455A and the agency rules promulgated thereunder; and (2) the agency action and requirements are not supported by the record and are unreasonable, arbitrary, and capricious. The district court determined that there was no statutory authority allowing the agency to impose conditions on the granting of the permits and, consequently, it addressed neither Osborne's contentions of agency rule violations nor the reasonableness of the agency's action under the record. On this appeal Osborne does not point to any rule violations nor do we find any.

■ The council has raised certain issues before us and Osborne has responded to them without urging additional matters. As these issues generally follow the matters urged by Osborne in the petition for judicial review, we will consider them. The council claims: (1) the council possessed statutory authority to conditionally approve the construction; (2) the conditions for approval were reasonable and petitioner waived certain objections to the reasonableness of the conditions; (3) the court should not have overruled the council's motion for a more specific statement in the judicial review proceeding; and (4) the cost of transcribing the council hearing should have been taxed to Osborne. We need not address the third issue because the council failed to state, argue, or cite authority in its brief. Iowa R.App.P. 14(a)(3). The fourth issue was not presented to the district court except in a motion to enlarge and amend findings. This matter should be raised as an issue in some manner prior to a final ruling by the

district court. Therefore, we shall not consider it on appeal.

■ I. *Council authority to permit conditional approval.* The council's argument that it had authority to grant conditional approval is based in part on former Iowa Code section 455A.33(3). That section states:

3. *Application for permit.* In the event any person desires to erect or make, or to suffer or permit, a structure, dam, obstruction, deposit or excavation, other than a dam, constructed and operated under the authority of chapter 469, to be erected, made, used or maintained in or on any floodway or flood plains, such person shall file a verified written application with the director, setting forth the material facts. The director shall provide the council with copies of the application and an opportunity for the council to call up the application for its determination. The director, or the council, after an investigation or a public hearing if there is an objection to the proposed project shall determine the fact and approve or deny the application imposing such conditions and terms as the director or council may prescribe. A determination of the director may be appealed to the council by any aggrieved party.

Iowa Code § 455A.33(3) (1981). This court has recently examined this section for the very issue raised in this case. In *Martin v. Iowa Natural Resources Council,* 330 N.W.2d 790 (Iowa 1983), we affirmed the council's conditional grant of a landowner's after-the-fact application for permission to construct an agricultural levee on a river. Petitioner had argued that the section did not permit abatement of existing structures except by action in equity or by condemnation. We stated that his arguments seemed to be in conflict with *Easter Lake Estates, Inc. v. Iowa Natural Resources Council,* 328 N.W.2d 906, 909 (Iowa 1982). Although we ultimately rejected petitioner's argument on another ground, we did state:

Section 455A.33(3) confers statutory authority on the agency in granting permit approvals to impose "such conditions and terms as the director or council may prescribe." We hereafter conclude in our discussion of other arguments made by the petitioner that the conditions imposed by the agency for granting [an after-the-fact] permit for petitioner's levee construction were validly related to agency rules governing the location of encroachment limits. As such, the conditions are not subject to attack on the grounds urged by petitioner.

*Martin,* 330 N.W.2d at 793. Accordingly, we agree that the court erred in finding the council did not possess the statutory authority to conditionally grant an after-the-fact construction permit. As in *Martin* we need not decide the scope of remedies that may be available if Osborne takes no action to comply with these conditions. *Id.* at 792–93.

■ II. *Reasonableness of the conditions.* Since the district court did not examine the reasonableness of the conditions prescribed by the council in granting the permit, we find it necessary to address briefly the scope of our review. Our duty when reviewing a district court ruling on judicial review is to correct errors of law made by the district court. *Caterpillar Davenport Employer's Credit Union v. Huston,* 292 N.W.2d 393, 395 (Iowa 1980). The district court, when exercising the power of judicial review conferred by Iowa Code section 17A.19, is itself acting in an appellate capacity to correct errors of law as specified in section 17A.19(8). When we examine the district court's review of administrative action we ask only whether the district court correctly applied the law. *Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W.2d 426, 429–30 (Iowa 1979). If on judicial review of an administrative action the district court finds one issue dispositive and thus does not address other issues, we can review those issues when reviewing the district court's decision. If we disagree with the district court's ruling on the "dispositive" issue, we will then examine the other issues to determine whether the district court correctly applied the law in not considering the additional issues.

Since we disagree with the district court's finding on the "dispositive" issues we will now address the general contention that the council's action was unreasonable. To do so it is necessary to examine in greater detail the three applications for permits and the factual occurrences surrounding them.

In response to the attorney general's suit Osborne applied for an after-the-fact permit for the straightening of about 1000 feet of the Wolf Creek channel. Following a hearing on the application the council gave approval subject to the following conditions: The channel is to be widened to sixty feet; the entire existing levee on the north bank of Wolf Creek as it runs through the forty acres shall be relocated; the alignment of the channel where Osborne's property adjoins the land of his downstream neighbor is to be corrected; and Osborne is to provide a fifty foot strip of land along the channel for wildlife habitat. Osborne objected to these conditions and was granted a rehearing.

The council later agreed to delay compliance with the channel widening until Osborne and Broeker submitted a joint application for a new alignment of the downstream channel. This joint application was subsequently filed and is the second application. Another request for rehearing of the first application was then filed and Osborne also filed a third application for a permit. This third application is for after-the-fact approval of the levee on the north side of the creek. After hearings on the second and third applications, and a second rehearing on the first application in which the council agreed to lessen the channel widening requirement, the council entered its final orders on all three applications. This led first to the petition for judicial review and then to this appeal.

The final orders on all three applications are interdependent and must be considered together. The final order on the application for the 1977 channel change reduced the widening requirements to a forty-four foot average bottom width. It also provided for a strip of land for wildlife habitat twenty-five feet wide on both sides of the channel along part of the length of the channel. The levee permit was allowed subject to removal of the levee at least 100 feet north of the channel. The joint application was approved on the condition that a twenty-five foot wide strip of land be set aside permanently for wildlife habitat.

Osborne contends that under the record the conditions and requirements of the application are unreasonable, arbitrary, and capricious. In his petition for judicial review Osborne alleged generally the unreasonableness of the council action and argued that the channel straightening did not increase flooding or cause harm and that the structural changes required by the council were not at all related to the channel change made by Osborne. In his brief directed to the district court Osborne questioned the wildlife habitat condition and the need for construction unrelated to the channel change. In his appellate brief he challenged the relocation of that part of the levee bordering that part of the channel straightened before 1977, the required channel alignment on the Osborne-Broeker boundary, and the reasonableness of the wildlife habitat condition. We shall address each of these three challenges.

A. *Levee relocation.* The 2500 foot levee across Osborne's land was constructed in three segments and at three different times. Although the time of the first construction was disputed, the council found the west 500 feet was constructed after the effective date of legislation now embodied in chapter 455A. There was sufficient evidence in the record to sustain the council's findings. The next 1000 feet of the levee was constructed by Osborne in 1969 and was connected to the first segment. The last 1000 feet was placed along the channel after the 1977 straightening. The council conditioned the permit for the levee, which permit was in turn a condition for the 1977 channel change permit, upon removing the entire levee at least 100 feet from the north side of the creek. Osborne is under no compulsion to rebuild the levee, but he must remove it from its present location.

Osborne particularly attacks the requirement that he remove the 1500 feet of levee that lies upstream from the 1977

channel change. Most of his arguments pertain to the authority of the commission to impose such conditions, an argument which has been disposed of earlier in this opinion. However, he also contends that the removal requirement is a particularly flagrant example of the wholly unreasonable scope and content of the requirements of the council. We cannot agree.

The construction of the channel and the adjacent levees have had an effect upon both the upstream and downstream neighbors. The existing levee results in a 1.7 foot maximum backwater floodstage at the upstream property line in violation of council rule 580 I.A.C. § 5.53(1)(d). The channel flood velocity has increased from 4.0 feet per second to 6.4 feet per second and has increased soil erosion. We shall not recite all of the evidence that the council may have relied upon. We deem this condition to be reasonable.

■ B. *Channel change.* The requirement that Osborne and his neighbor construct a new channel change at the boundary line is also reasonable. The evidence is clear that the 1977 change caused an abrupt transition problem with the downstream natural channel in violation of council rules. The means of correcting the abrupt transition of the channel was designed by Osborne's engineer. The channel change would correct the problems caused by the original change.

■ C. *Wildlife habitat.* We conclude that the council has authority to consider the effect of construction on fish and wildlife and to impose conditions for permit approval. Iowa Code section 455A.18 (1979) expressly places on the council the duty to consider fully the effect "on fish, wildlife and recreational facilities or uses" when considering a permit application. A council rule provides:

*Fish and wildlife habitat and public rights.* The channel change shall not have a significant adverse effect on fish and wildlife habitat or public rights to use of the stream. Conservation easements and other conditions may be required to mitigate potential damages to the quality of water, fish and wildlife

habitat, recreational facilities, and other public rights.

580 I.A.C. § 5.51(7) (1978). This council rule is in accordance with statutory direction and provides the council with an affirmative duty toward protection of fish and wildlife habitat.

■ Osborne disputes the reasonableness of requiring him to provide a twenty-five foot wide strip of land for wildlife habitat on each side of the downstream channel change. He argues that this requirement is unreasonable because the council required a levee offset of 50 to 100 feet on other projects upstream. He claims that the council arbitrarily imposes this requirement without considering the facts of a particular case. The council agrees that it usually requires a strip of more than twenty-five feet, but it explains that it voted to lower the requirement to twenty-five feet after Osborne stated that he always seeded twenty to twenty-five feet from the edge of the creek.

We find no merit in Osborne's claim of unreasonableness. The evidence is clear that by his unauthorized channel straightening Osborne reduced the fish population and that there is no known way to mitigate this impact. It was entirely reasonable and proper for the council to require Osborne to compensate for his destruction by improving the habitat of wildlife. The fact that on rehearing the width of the habitat strip was reduced works only to the benefit of Osborne. Consequently, he has no valid complaint.

III. *Conclusion.* We have considered all of the contentions raised by the parties and have addressed those issues which have any merit. We conclude that the district court erred as a matter of law when it set aside the three council orders and that it should have affirmed the council action. Therefore, we reverse the ruling of the district court.

REVERSED.