Dolly ANDERSON, Appellant,

v.

**IOWA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 84–1116.

Supreme Court of Iowa.

May 22, 1985.

Donna J. Henderson, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Eleanor E. Lynn, Asst. Atty. Gen., for appellee.

Considered by UHLENHOPP, P.J., and McCORMICK, LARSON, SCHULTZ and CARTER, JJ.

SCHULTZ, Justice.

The primary issue in this appeal is whether the intent of the parties in establishing a bank account in joint tenancy may be considered in determining the ownership of the account. Petitioner Dolly Anderson (Dolly) was denied medical assistance benefits for three months by the Department of Human Services [1] because the assets in a

---

1. At the time of the filing of the claim for    benefits, the agency was titled the Department

joint bank account, held in the names of Dolly and her sisters, exceeded the minimum standard for eligibility for benefits. In its final decision, the agency adopted a hearing officer's legal conclusion that the intent of a party in establishing a joint account has no bearing on the ownership of the account; thus, the entire amount should be counted toward the resource limitation placed on an applicant for medical assistance. We disagree with this conclusion and reverse the district court ruling on judicial review which affirmed the agency action.

■ Dolly, age 60, lived with her two sisters, Dorothy and Doris. She suffered a stroke and was hospitalized from July 26 to December 23, 1982. In December, she applied for and became entitled to Supplemental Security Income (SSI) automatically making her eligible for medical assistance pursuant to Iowa Code section 249A.3(1)(a), which is also known as Title XIX or Medicaid. Applicants may receive medical assistance benefits for a retroactive three-month period if they are otherwise eligible. 498 Iowa Admin.Code § 76.5(1). One of the requirements for eligibility is that the applicant may not have resources that exceed $1500. 20 C.F.R. § 416.1205A (1983). Dolly was denied retroactive benefits because she was a joint tenant of a bank account along with her sisters, Dorothy and Doris.

Consistently throughout the administrative proceedings and on appeal Dolly has maintained that she did not own the joint bank account. Although she admitted that her name was on the account, she stated that it was not necessarily her money and that she had not made any deposits to the account. She had placed her previous earnings in a certificate which was depleted. An affidavit from Dorothy indicated that Dorothy opened the account and that at no time did either Dolly or Doris make deposits into the account. Dorothy stated that a joint account was established so her sisters could have access to the money in the event of her death. Doris also verified that the money in the account did not belong to Dolly. While Dolly's testimony demonstrated confusion regarding the bank accounts, she testified that "one purpose [for the joint account] was for the household purposes" and that she was entitled to write checks.

We deem it necessary to review the proposed decision by the hearing officer since the agency's final decision adopted it. The hearing officer rejected Dolly's contention that intent was the controlling factor in determining ownership of a joint bank account, concluding that intent "had no bearing on the availability of funds." Because Dolly could write checks, the hearing officer concluded the account was available to her. Additionally, the hearing officer concluded that, prior to December 1, Dolly was ineligible for SSI benefits based on information received from the Social Security Administration (SSA). The evidence indicates that a local Department worker inquired into Dolly's eligibility for SSI benefits by a phone call and later by a written informational request to the SSA. Although the worker received a response that Dolly was "over resources" during the three-month retroactive period, the record does not reflect, nor does the Department claim, that Dolly sought retroactive SSI benefits or that she had notice of or any input into the oral and written request for an advisory opinion. Finally, the hearing officer alluded to a decision of the Appeals Council of the SSA, offered into evidence by Dolly, which held contrary to the Department's policy concerning the intent of the parties in establishing joint accounts; however, beyond noting the discrepancy the hearing officer gave it no weight and adopted a contrary position.

Dissatisfied with the decision of the hearing officer, Dolly unsuccessfully requested an agency review of the proposed decision and then filed a petition for judicial review, pursuant to Iowa Code section 17A.19, in district court. In her petition Dolly maintained that the Department of Human Ser-

of Social Services. However, the title was changed to the Department of Human Services effective July 1, 1983. 1983 Iowa Code Supp., Code Editor's Preface.

vices had disregarded the policy of the SSA which considers the intent of the parties in examining a joint bank account situation for an SSI eligibility determination and that the decision of the Department was not supported by substantial evidence. In its ruling the district court did not address the correctness of the hearing officer's conclusion that the intent of the party in establishing a joint account has no bearing on the availability of funds, basing its ruling on a determination that there was substantial evidence to support the decision of the agency. The district court, in a finding of fact, found that the Department had contacted the SSA for a ruling on Dolly's status and was advised that she would not be eligible for SSI benefits.

Initially we discuss pertinent principles involving judicial review. The district court when ruling in judicial review cases is acting in an appellate capacity to correct errors of law as specified in Iowa Code section 17A.19(8). *Osborne v. Iowa Natural Resources Council*, 336 N.W.2d 745, 748 (Iowa 1983). Subsection 17A.19(8) in pertinent part provides:

> The court shall reverse, modify, or grant any other appropriate relief from the agency action ... if substantial rights of the petitioner have been prejudiced because the agency action is:
>
> ....
>
> e. Affected by other error of law;
> f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole....

On appeal, we determine whether the district court correctly applied the law. *Osborne*, 336 N.W.2d at 748. If the district court found one issue dispositive and did not address the other issues, we can scrutinize all issues in reviewing the rulings. *Id.*

Although appellant has presented diverse arguments and positions, the common thread of her argument concerns the correctness of the legal conclusion of the agency that the intent of the parties has no bearing on the ownership of a joint bank account. The district court did not address

this issue; it decided the case on its determination that substantial evidence supported the agency's determination. If the agency erred in its conclusion of law, however, its fact-findings concerning Dolly's eligibility would also be affected. Reversal and remand to the agency for a fact-finding anew under the correct legal principles would be required. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192–93 (Iowa 1980).

Dolly's first argument raises the question of whether deference should be given the policies of the SSA or the Department. She claims that the Department is bound by the policy determinations of the SSA and correctly points out that the hearing officer's decision noted the discrepancy between the two agencies in their treatment of joint bank accounts. Dolly had placed into evidence a decision of the SSA Appeals Council which stated as follows:

> The Appeals Council has adopted the policy that the intent of the parties will be considered in determining ownership of the funds in a joint bank account and that where one party is added to the account merely for convenience purposes and survivor rights, the entire balance will be charged to the other party.

The hearing officer determined that the Department's policy was contrary, citing a Department employee's manual which states that if co-owners can withdraw the funds, the entirety is counted toward the resources limitation regardless of ownership. Dolly urges that the hearing officer erred by adopting the policy stated in the employee's manual. The Department did not respond to this argument directly, but took the position that there was substantial evidence of the SSA position in the record as shown by the SSA's answers to the Department's inquiries concerning whether Dolly met eligibility requirements for SSI.

The declared purpose of the Medicaid program under Title XIX of the Social Security Act is to furnish "medical assistance on behalf of ... disabled individuals, whose income and resources are insuffi-

cient to meet the cost of necessary medical services...." 42 U.S.C. § 1396 (1982). Participation in this cooperative federal-state program is voluntary, but once a state chooses to participate, it must comply with federal statutory requirements. *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794 (1980). As indicated in the hearing officer's decision and the briefs of the parties, the Social Security Act and the SSI regulations do not address specifically the treatment of joint bank accounts. Likewise, the parties do not claim, nor do we find, any Department rule formally adopted concerning this question. Thus, we are left with the question of whether the policy of either the federal or the state government can be determined by a single administrative decision or by an interpretive rule found in an employee's manual which has not been adopted formally as an agency rule.

A decision of the SSA Appeals Council does not set the policy of the Department. Countless cases are heard by the Appeals Council and the rulings are subject to further review by the federal courts. Undoubtedly, this ruling by a panel of the Appeals Council provides excellent perspective concerning how it would rule in the next case; however, we cannot conclude that this statement of policy has the same effect as a statute or a rule by the federal agency.

Likewise, in this instance the policy of the Department is not determined by citation or reference to a section in the Department's employee manual. Validly adopted rules have the force and effect of law. The term "rule" and its exceptions are defined in section 17A.2(7), and careful procedures for promulgation of such rules are provided in sections 17A.2–.9. No claim has been made by the Department that the section in the employee's manual is a validly adopted agency rule or a written statement of policy within the meaning of section 17A.3(2); it only urges that this portion of the manual rules was taken from SSI regulations. Neither the record nor the parties' briefs set out the manual rules.

At most the manual rules appear to be guidelines for the consideration of a claim.

Professor Bonfield cautions against communicating policies affecting the public without following the procedures for rulemaking as follows:

> The only caveat is that any final product they adopt which will substantially affect the public or any segment thereof, must be promulgated with all the procedural niceties required for the rules. This is so whether that final product defining law or policy of general applicability is denominated a "memorandum, directive, manual or [any] other communication."

Bonfield, *Administrative Procedures Act*, 60 Iowa L.Rev. 731, 835 (1975) (citing § 17A.2(7)(c)). Reliance on the manual rule in determining eligibility for benefits substantially affects the public. To have the force and effect of law the manual must be promulgated properly. If a claim had been made that the manual rule was a validly adopted agency rule, the burden would have been on Dolly to demonstrate its invalidity.

We conclude that the decision of the hearing officer, adopted in the Department's final decision, which cited and relied on the manual rule as authority for its conclusion of law regarding the substantive rights of owners of a joint bank account was in error. In determining whether this is reversible error we must decide whether the intent of the parties in establishing a joint bank account has a bearing on the availability of funds.

As indicated, the policy of Medicaid is to provide medical assistance to disabled individuals whose resources are insufficient to meet the cost of necessary medical services. The term "resources" is defined in pertinent part as: "cash or other liquid assets or any real or personal property that an individual ... owns and could convert to cash to be used for his support and maintenance. If the individual has the right, authority or power to liquidate the property, or his share of the property, it is considered a resource...." 20 C.F.R. § 416.1201 (1983). Since ownership and the power to

liquidate are necessary elements of a resource, we must then determine the ownership of bank accounts held in joint tenancy and the authority or power of individual joint tenants to liquidate the accounts. This discussion of the rights of the joint tenants is limited to the time before the death of a co-owner and does not include consideration of survivorship rights.

The right of a joint tenant is generally described as "an undivided interest in the entire estate to which is attached the right of survivorship". *Brown v. Vonnahme*, 343 N.W.2d 445, 451 (Iowa 1984). The precise extent or share of the undivided interest attributable to an individual joint tenant may be determined, however. The rights of the individual joint tenants must be determined from their agreement. *Keokuk Savings Bank & Trust Co. v. Desvaux*, 259 Iowa 387, 393, 143 N.W.2d 296, 300 (1966). Generally, the respective rights of the parties to a joint bank account are determined by the rules of contract law, and the intent of the parties with respect to the joint savings account is controlling. 48A C.J.S. *Joint Tenancy* § 23 (1981); *see Jennings v. McKeen*, 245 Iowa 1206, 1214, 65 N.W.2d 207, 211 (1954). Each joint tenant is presumed to own an equal share in the joint bank account; however, this presumption is rebuttable. 48A C.J.S. *Joint Tenancy* § 23. Federal case authority supports this position. *Rosenfeld v. Secretary of Health and Human Services*, 563 F.Supp. 1192, 1196 (E.D.N.Y. 1983); *First Wisconsin Trust Co. v. United States*, 553 F.Supp. 26, 30 (E.D.Wis. 1982). *Rosenfeld* involved a denial of SSI benefits because income from an account held jointly with the applicant's husband was attributed to the applicant. The federal district court held that the Secretary erred in attributing all the money in the joint account to the applicant and required the Secretary to consider the intent of the parties in making a transfer to the account. The court recognized that under New York law joint tenants are presumptive one-half owners of the funds upon the creation of a joint account, but the presumption is rebuttable, citing *Coughlin v. Commissioner of Social Services*, 75 A.D.2d 895, 428 N.Y. S.2d 291 (2d Dept.1980). *Rosenfeld*, 563 F.Supp. at 1196. In *Coughlin* the petitioner was denied Medicaid benefits because of excess resources. The petitioner had established a joint account with a nephew several years before, and the Department determined that this account was entirely her resource. The New York court reversed the ruling holding that the presumption of joint tenancy was not rebutted because there was no evidence that "she did not intend to confer a beneficial interest in the account by making a gift to her nephew of one-half of the sums on deposit." 75 A.D. at 896, 428 N.Y.S.2d at 293.

Our case law likewise holds that establishment of a joint tenancy creates a rebuttable presumption that joint tenants hold in equal shares. *Frederick v. Shorman*, 259 Iowa 1050, 1056, 147 N.W.2d 478, 482 (1966). In *Frederick* a mother, who placed title to property in joint tenancy with a son, unsuccessfully sought to enjoin her former daughter-in-law, a judgment creditor of the son by a divorce decree, from attaching the son's interest in the joint property. She claimed that the son had no more than a survivorship interest because he had not followed his agreement to pay one-half of the purchase price and upkeep of the property. We held that the intent sought to be reached was that intent existing on execution of the deed, and the mother had to rebut the presumption of equal shares by clear and convincing evidence. *Id.* 259 Iowa at 1058–59, 147 N.W.2d at 483–84.

We therefore conclude that the hearing officer and the Department in its final decision erred as a matter of law in not taking into account the intent of the three sisters in creating the bank account in joint tenancy. Nor do we agree with the determination that the ability to write checks on the account made the money available to Dolly. Generally, a party to a joint bank account may only withdraw funds without liability to his codepositor when in fact he is the real owner of the money. 48A C.J.S. *Joint Tenancy* § 23

(1981). The right to withdraw funds from the joint account depends on the agreement or the understanding of the party. *Id.* In *Coughlin* the court held that a cotenant may not withdraw from the account in excess of his interest; "if he has done so, he is liable to the other joint tenant for the excess so withdrawn." 75 A.D. at 896, 428 N.Y.S.2d at 293; *see also Allen v. Gordon,* 429 So.2d 369, 371 (Fla.App.1983) (action for conversion of funds in a joint account created for convenience); *Erhardt v. Leonard,* 104 Idaho 197, 201, 657 P.2d 494, 498–99 (Idaho App.1983) (action for conversion of funds in a joint savings account).

We hold that the Department erred as a matter of law when it did not consider the intent of the parties in creating the joint tenancy account. The establishment of a joint tenancy account did create a rebuttable presumption that all three sisters own the account, but the presumption may be overcome by a showing that the parties did not intend to give Dolly ownership of the account.

Finally, we address Dolly's claim that the Department should not have relied upon oral and written information supplied by a federal SSA case worker since this matter will arise again on remand. On appeal the Department contended substantial evidence in the record supported the Department's decision, alluding to the information from the SSA. Asserting that the information was highly credible, the Department asked "who should know better than the Social Security Administration what its regulations and policies are, and how to apply SSI regulations." In response, Dolly claims the Department seeks to absolve itself from an independent determination by adopting a federal caseworker's opinion reached without any input from Dolly. Although Dolly's objection is not precise, we conclude she is attacking the credibility of the evidence. Obviously, this evidence is based on hearsay and contains opinions and legal conclusions. However, no objection was made at the hearing. Therefore, the question is not one of admissibility, but concerns the weight which may be afforded the evidence.

The Department has the responsibility to make findings of fact and conclusions of law based solely on the evidence in the record and on matters officially noticed. §§ 17A.12(6), (8). Section 17A.14(1) provides that a "finding shall be based upon the kind of evidence on which reasonably prudent persons are accustomed to rely for the conduct of their serious affairs, and may be based upon such evidence even if it would be inadmissible in a jury trial." The evidence of the oral and written response from the SSA to the inquiry by the Department's caseworker indicates that Dolly was ineligible during the retroactive three months because she was "over resources." Granted, this is an opinion answer and the record does not reflect the facts upon which that opinion was based. However, it is the duty of the agency to assess the credibility of the witnesses and the weight of the evidence is to be afforded, pursuant to section 17A.14(1). Dolly may present her contentions that danger inheres in a decision-making process when "there are no safeguards to prevent arbitrary decision-making based on unreviewable actions of other agencies" to the Department on remand. Our role at this time is to remand for further proceedings by the Department rather than render an advisory ruling.

We hold that the trial court erred in affirming the agency action. The matter is reversed and remanded to the agency for a new fact-finding in accordance with this opinion.

REVERSED AND REMANDED.