424 N.W.2d 427 (1988)
DUBUQUE COMMUNITY SCHOOL DISTRICT, Petitioner-Appellee,
v.
PUBLIC EMPLOYMENT RELATIONS BOARD and Dubuque Education Association, Respondents-Appellants.
DUBUQUE EDUCATION ASSOCIATION, Petitioner-Appellant,
v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent-Appellant.
No. 87-64.
Supreme Court of Iowa.
May 11, 1988.
*428 Amy J. Mills, Des Moines, for appellant Public Employment Relations Bd.
Charles E. Gribble of Sayre & Gribble, P.C., Des Moines, for respondent-appellant Dubuque Educ. Ass'n.
Stephen J. Juergens of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for petitioner-appellee Dubuque Community School Dist.
Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.
NEUMAN, Justice.
In May 1985, the Dubuque Education Association (DEA) petitioned the Iowa Public Employment Relations Board (PERB) to amend its collective bargaining unit to add substitute teachers qualifying for inclusion under the Public Employment Relations Act (Act), Iowa Code chapter 20 (1987). The Dubuque Community School District (school district) resisted the amendment on two grounds. First, it claimed the substitute teachers sought to be included in the bargaining unit were precluded from coverage under the Act by section 20.4(5) which excludes "[t]emporary public employees employed for a period of four months or less." Second, the school district claimed that including substitute teachers in the bargaining unit already composed of regular teachers and professional employees would be inappropriate.
After an evidentiary hearing, an agency hearing officer interpreted section 20.4(5) to mean that substitute teachers performing some service in each of four consecutive months are public employees covered by the Act. PERB affirmed this ruling, consistent with its decision in Iowa Association of School Boards and Iowa State Education Association, No. 2703 (PERB Feb. 18, 1985). Then pending judicial review in Polk County district court, the decision was ultimately affirmed by this court in Iowa Association of School Boards v. PERB, 400 N.W.2d 571 (Iowa 1987). PERB also affirmed the hearing officer's conclusion that substitute teachers would be appropriately included in the existing bargaining unit.
In the meantime, both DEA and the school district petitioned for judicial review of the PERB decision. See Iowa Code § 17A.19(1) (1987). DEA challenged PERB's insistence on a four-month consecutive service qualification under the Act. The school district persisted in its claim that substitute teachers were ineligible for inclusion in any bargaining unit under the Act and, alternatively, that the proposed amendment to the existing bargaining unit would be inappropriate.
The district court consolidated the petitions for judicial review. Without having the benefit of our Iowa Association of School Boards opinion, the court concluded that PERB had misinterpreted the exclusionary language of section 20.4(5). Accordingly, the district court dismissed DEA's petition to amend the bargaining unit. It did not reach the question whether substitutes must annually requalify for inclusion in the bargaining unit, or the question of whether the proposed bargaining unit was appropriate. We now reverse the *429 district court and address the unresolved issues.
I. In Iowa Association of School Boards v. PERB, we directly addressed the question whether substitute teachers are covered under Iowa's Public Employment Relations Act. 400 N.W.2d at 574. To find the answer, we looked for legislative meaning underlying the section 20.4(5) exclusion of "[t]emporary public employees employed for a period of four months or less." We drew two conclusions. First we determined that the use of the word "period" connoted consecutive months of employment. Id. at 575. Next we considered the legislature's use of the word "temporary". Applying the ordinary meaning of the term, we affirmed PERB's conclusion that the legislature's failure to distinguish between full-time and part-time employment meant that any service rendered in each of four consecutive months triggers the Act's provisions for a temporary employee. Id. at 576.
Notwithstanding this very recent pronouncement on the issue, both the DEA and the school district urge us to reconsider our interpretation of section 20.4(5). The DEA urges us to abandon the consecutive month requirement. The school district urges us to uphold the district court's interpretation of the statute which would require a substitute teacher to serve each and every school day for a period of more than four consecutive months to obtain the benefits accorded to a public employee under the Act.
Although the parties' arguments, pro and con, are not without merit, we fully addressed them in the Iowa Association of School Boards case and are not disposed to revisit them here. Substitute teachers who perform service for the school district in each of four consecutive months are, under our interpretation of section 20.4(5), entitled to the benefits of collective bargaining. There remains, however, the "requalification" issue raised by the school district before PERB and renewed on appeal which merits our attention.
The question is whether a substitute teacher, once qualified for inclusion in the bargaining unit by four months consecutive service, must "requalify" in each succeeding school year in order to qualify for bargaining unit inclusion. The school district argued that in contrast to regular classroom teachers who have individual contracts commencing with the first day of the school year, substitutes who qualify by teaching in more than four consecutive months of any school year are necessarily unknown at the beginning of the school year. They may remain so until sometime after collective bargaining has ensued. Without annual requalification, the district claims that membership in the bargaining unit cannot be accurately predicted, thus precluding accurate cost projections of a negotiated contract.
The DEA resists such a proposal as unworkable given the fact that contract negotiations ordinarily commence in October and conclude by March 15. See Iowa Code § 20.17(10). PERB resolved this controversy consistent with its decision in Iowa Association of School Boards, concluding that public employees who work in more than four consecutive months have a reasonable expectation of continued employment and are thereafter covered by the Act. Having met this standard, PERB contends, an employee is not obliged by section 20.4(5) to work in consecutive months "ad infinitum." Annual requalification would allow employers, absent legitimate business reasons, to schedule employees in such a way as to deny protection of the Act, notwithstanding the fact that such schedule manipulation may constitute a prohibited practice under sections 20.10(2)(a) and (d). These statutes prohibit a public employer from interfering with the exercise of an employee's right to be represented in collective bargaining by an employee organization.[1]
*430 Having considered the arguments presented, we are not persuaded that either the district's insistence on yearly requalification or PERB's "once a public employee, always a public employee" approach satisfactorily meets the "reasonable expectation of continued employment" standard unique to the employment of substitute teachers. In an earlier case in which we analyzed the status of substitutes for purpose of unemployment benefits, we observed:
Despite the indefiniteness of teaching assignments under a substitute teaching agreement, the agreement does span the entire school year. Consequently, the contract of hire is not fulfilled when each assignment is completed. Also, the employment relationship remains intact if the substitute teacher is offered the same job for the following year.... Additionally, a substitute teacher has a continued employment relationship with the school district if he [or she] is offered similar employment for the following term.
Des Moines Indep. Community School Dist. v. Department of Job Serv., 376 N.W. 2d 605, 610 (Iowa 1985).
The facts in the case before us reveal that it is customary each spring for the district to notify substitutes of the potential for employment in the coming year and to seek a response from them regarding their availability and willingness to be called. Given a substitute who has qualified for bargaining unit inclusion under the four consecutive month test of section 20.4(5), and given the district's offer of employment the following school year, we think there is clearly a reasonable expectation of continued employment justifying that employee's ongoing inclusion in the bargaining unit without further requalification. If during the ensuing school year the employee refuses opportunities to substitute, or the school district either finds the substitute's performance unsatisfactory or has no need of the substitute's work, then we presume the substitute would not be invited to consider further opportunities for employment and the reasonable expectation standard would no longer apply. Thus one full year's lapse in meeting the section 20.4(5) standard would necessitate requalification. But a substitute who qualifies in one school year will be presumed to qualify at the commencement of the succeeding year for purpose of contract negotiation, and will thereafter qualify so long as service in four consecutive months in each school year is maintained.
II. Having concluded that substitute teachers may be entitled to collective bargaining rights under the Public Employment Relations Act, we are faced with the question whether a bargaining unit which combines substitute teachers with regular classroom teachers and other professional staff such as nurses and counselors would be appropriate under the guidelines set forth in Iowa Code section 20.13(2). That statute, which vests PERB with the authority to determine in the first instance whether a proposed bargaining unit is appropriate, states in pertinent part:
In defining the unit, the board shall take into consideration, along with other relevant factors, the principles of efficient administration of government, the existence of a community of interest among public employees, the history and extent of public employee organization, geographical location, and the recommendations of the parties involved.
Iowa Code § 20.13(2).
Based on the record developed in this case, PERB concluded that application of the foregoing standard favored inclusion of substitute teachers in the regular teachers' bargaining unit currently represented by the DEA. The school district challenged that conclusion before the district court, claiming it was arbitrary, affected by errors of law, and unsupported by substantial evidence in the record. See Iowa Code § 17A.19(8). On appeal, our review of the evidence is at law, not de novo. Anthon-Oto Community School Dist. v. *431 PERB, 404 N.W.2d 140, 142 (Iowa 1987). The decision made by the agency is entitled to our deference if reasonable and not clearly erroneous. Iowa Ass'n of School Bds., 400 N.W.2d at 575. The possibility that two inconsistent conclusions might be drawn from the same evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Peoples Memorial Hosp. v. Iowa Civil Rights Comm'n, 322 N.W.2d 87, 91 (Iowa 1982). Evidence is substantial when a reasonable mind could accept it as adequate to reach a conclusion. City of Davenport v. PERB, 264 N.W.2d 307, 311 (Iowa 1978).
Before we can reach the question of whether PERB reasonably defined an appropriate bargaining unit in the case before us, we must address the fact that the district court did not rule on this issue. It disposed of the case on the so-called "coverage" question. The school district thus claims we must remand to the district court for determination of the "appropriateness" issue. We cannot agree. As PERB aptly notes, administrative procedure calls for the agency to act as a trial court, hearing the evidence and creating the record. On judicial review of contested cases, we determine whether the agency's decision is supported by substantial evidence in the record. Meads v. Iowa Dep't of Social Serv., 366 N.W.2d 555, 557 (Iowa 1985); Iowa Code § 17A.19(8)(f). Our scope of appellate review is limited to the question of whether the district court correctly applied the law. Osborne v. Iowa Natural Resources Council, 336 N.W.2d 745, 748 (Iowa 1983). If on judicial review of agency action the district court finds one issue dispositive and thus does not address other issues, we can review the remaining issues on appeal. Id.; accord Anderson v. Iowa Dep't of Human Serv., 9 Soc.Sec.Law Rep. 957, 368 N.W.2d 104, 107 (Iowa 1985). Where, as here, the record made before the agency is clearly adequate to determine the legality and reasonableness of the agency's action, considerations of judicial economy compel our doing so.
Viewing the record as a whole, we find PERB's decision neither unreasonable nor erroneous. All of the section 20.13(2) criteria were addressed, with appropriate weight given to those the agency deemed most relevant under the circumstances. We review those factors briefly.
Under the "efficient administration of government" test, PERB applied its consistently held rule requiring designation of the fewest number of bargaining units possible consistent with the requirement that employees be permitted to form organizations of their own choosing to represent them in a meaningful and effective manner. See Anton-Oto, 404 N.W.2d at 143 and authorities cited therein. PERB recognized that diversity among employees may inhibit meaningful representation where, as here, the number of new members (75) is quite small compared with the number presently comprising the unit (683). However, PERB found no such problem here because the community of interest between substitutes and regular classroom teachers was demonstrably strong. This consideration, combined with a desire to avoid duplication of time and expense of negotiations involving separate bargaining units, led PERB to favor the proposed single unit.
In connection with the second statutory factorexistence of a community of interest among the employeeswe note with approval the criteria PERB consistently employs to measure this component:
duties, skills, qualifications, methods of compensation, benefits, hours of work, common supervision, employee contact with other employees, integration of work functions and time spent away from the work site, similarity of working conditions, and promotional ladders used by employees.
Fort Dodge Community School Dist., No. 2629 (PERB 1985); see also Des Moines Area Community College, No. 360 (PERB 1975); Corning Community School Dist., No. 92 (PERB 1975). Comparison of these factors in the present case discloses greater similarities than differences. Common sense tells us that skill levels will vary among teachers. But the record in this *432 regard reveals no significant difference between substitutes and regular classroom teachers. Each must maintain minimum certification requirements. Moreover, the duties, hours, supervision, employee contact and working conditions attached to each teaching assignment, for either a substitute or contract employee, are largely the same.
Greater dissimilarity was demonstrated in the area of wages and benefits, due to the wide variation in frequency and duration of employment between substitutes and regular classroom teachers. PERB gave little weight to this factor, viewing the disparity in compensation and hours a function of unilateral action by the district. Although we think the record might support a contrary conclusion, we agree that because substitutes share with regular classroom teachers the common mission of education, the significance of this factor is minimized in the overall determination of community of interest.
The remaining statutory factors of prior employee organization history, geographical location, and recommendations of the parties weighed less heavily in PERB's evaluation of the appropriate bargaining unit. The substitutes' lack of historical affiliation with another bargaining unit renders that factor insignificant. Anthon-Oto, 404 N.W.2d at 143. On the issue of geographical location, the record reveals that although substitute teachers may work in more than one attendance center, the same is true for regular classroom teachers, most notably those engaged in the arts. Evidence that substitutes wish to be represented by DEA and that DEA is willing to take on that representation was considered by PERB and found to be persuasive on the issue.
In summary, we find substantial evidence in the record to support PERB's conclusion that a combined unit of substitute and regular classroom teachers is appropriate under Iowa Code section 20.13(2). Although a decision establishing a separate bargaining unit for the substitute teachers may have found similar evidentiary support in the record, we are obliged to defer to the agency's expertise in such matters. Anthon-Oto, 404 N.W.2d at 143. Accordingly, we affirm the decision of the agency as modified on the issue of requalification discussed in division I, and reverse the ruling of the district court.
REVERSED.
NOTES
[1] The record in the case before us bore out PERB's concern for prohibited labor practices. In response to PERB's decision in the Iowa Ass'n of School Bds. case, the school district sent a letter to all substitute teachers which stated in relevant part:

Because of a new interpretation of substitute teaching, except on rare occasions, substitute teachers will not be assigned work for more than four months in a given school year.