Chad William CRIPPS, Appellant,

v.

IOWA DEPARTMENT OF TRANS-
PORTATION, MOTOR VEHI-
CLE DIVISION, Appellee.

No. 98–1518.

Supreme Court of Iowa.

July 6, 2000.

Rehearing Denied Sept. 1, 2000.

James A. Sinclair and Jeffrey M. Weber, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Kerry Anderson, Assistant Attorney General, for appellee.

CARTER, Justice.

Chad William Cripps, a motor vehicle operator whose operator's license was revoked as a result of a chemical test for breath alcohol concentration, appeals from the district court's decision upholding that revocation. The appellee is the Iowa Department of Transportation (IDOT), the agency that imposed the revocation. Cripps urges on appeal that, if the margin of error for the chemical testing method involved is subtracted from the test results, the difference is less than the concentration required for a license revocation. After reviewing the record and considering the arguments presented, we conclude that the agency's finding of the margin of error consistent with the revocation is supported by substantial evidence. Consequently, we affirm the judgment of the district court.

On July 26, 1997, a state trooper came upon Cripps stopped along a roadway in his motor vehicle. When the trooper investigated, he noted the odor of alcohol emanating from the vehicle. No other indicia of intoxication was noted by the trooper throughout his initial contact with Cripps. The trooper administered three field sobriety tests. Cripps failed only the horizontal gaze nystagmus test and achieved passing scores on the one-leg

stand and the walk-and-turn test. The trooper then administered a preliminary breath test and obtained a test result in excess of .10.

Cripps was then placed under arrest and transported to the Webster City police station. There, the implied-consent procedure was invoked, and Cripps gave a breath sample that was analyzed by an Intoxilyzer 4011A. The test results showed an alcohol concentration of .106. Based on that test result, IDOT revoked Cripps' operating privileges pursuant to Iowa Code section 321J.12 (1997).

Cripps sought review of the revocation before an administrative law judge (ALJ). Based on evidence produced at a hearing, the ALJ found that, when the margin of error for the Intoxilyzer 4011A was taken into consideration, the breath alcohol concentration was insufficient to warrant revocation of Cripps' license. That conclusion was reversed by the agency on review of the ALJ's decision. On judicial review the district court upheld the agency's final order. Other facts that bear on this controversy will be discussed in connection with our discussion of the legal issues presented.

## I. *The Jurisdictional Issue.*

Initially, we must consider a jurisdictional issue. IDOT questions the timeliness of Cripps' notice of appeal. That document was not filed within thirty days of the district court's decision but was filed within thirty days of that court's ruling on Cripps' postdecision motion labeled as a motion under rule 179(b) of the Iowa Rules of Civil Procedure. IDOT contends that the motion was in fact not a proper rule 179(b) motion and thus did not extend the time for the filing of a notice of appeal. Our resolution of this issue requires us to consider the nature of a rule 179(b) motion in judicial proceedings seeking a review of administrative action.

■ Under our rules of civil procedure that were in effect prior to July 1, 1980, a motion under rule 179(b) was not available in a judicial review of an agency decision. *Budde v. City Dev. Bd.,* 276 N.W.2d 846, 851 (Iowa 1979). The adoption of our present Iowa Rule of Civil Procedure 333(c), effective on July 1, 1980, altered that limitation and thereafter motions under rule 179(b) could be filed and considered in proceedings for judicial review of agency action involving a contested case. *See Kunau v. Miller,* 328 N.W.2d 529, 530 (Iowa 1983) (discussing history of rule 179(b) in agency review). In its normal application to nonjury bench trials in which the court determines both the facts and the law, motions under rule 179(b) may be employed to seek enlargement or change of both the factual and the legal determinations of the court. *Bellach v. IMT Ins. Co.,* 573 N.W.2d 903, 904–05 (Iowa 1998); *Peoples Trust & Sav. Bank v. Baird,* 346 N.W.2d 1, 2 (Iowa 1984); *Suckow v. Boone State Bank & Trust Co.,* 314 N.W.2d 421, 424 (Iowa 1982). The motion may also seek changes in the judgment consistent with the altered findings or conclusions. Because judicial review of agency findings in contested-case proceedings do not involve new findings made by the district court, rule 179(b) motions in that type of case will necessarily involve issues of law. *Osborne v. Iowa Natural Resources Council,* 336 N.W.2d 745, 747 (Iowa 1983).

■ Based on the principles we have discussed, we are convinced that, if the result sought to be achieved by a postdecision motion in a review of an agency contested case is a change in the court's legal conclusions, its decision, or both its conclusions and decision, such a motion falls under the umbrella of rule 179(b) if the result sought is within the power of the court. Cripps' motion, labeled as a rule 179(b) motion, sought to have the district court remand the proceeding to the agency for further proceedings. A district court is empowered by Iowa Code section 17A.19(8) to remand a case to the agency for further proceedings. *See Continental*

*Tel. Co. v. Colton,* 348 N.W.2d 623, 625 (Iowa 1984) (remand to the agency is a permissible disposition of judicial review proceedings in district court). Consequently, we believe that the challenged motion matches the profile of a rule 179(b) motion.

 IDOT urges that the purpose of the remand to the agency as requested by Cripps was to present additional evidence at the agency level. Such action, IDOT urges, is precluded by Iowa Code section 17A.19(7) because it was not requested prior to the hearing on judicial review. We disagree for two reasons. First, the fact that a request for an amended decision is lacking in legal merit does not in itself preclude such a request from being considered as a rule 179(b) motion if it requests a category of relief that the court is generally empowered to grant. Second, although section 17A.19(7) requires a request for the taking of additional evidence before the agency to precede the hearing on the petition for judicial review, we are not convinced that the court could not order that relief in the absence of a request prior to that time. Indeed, this court has done that in matters involving judicial review of agency action. *See Murillo v. Blackhawk Foundry,* 571 N.W.2d 16, 19 (Iowa 1997) (ordering remand to the agency for receipt of additional evidence when that relief had not been timely requested by appellant). For all of the reasons stated, we conclude that Cripps' notice of appeal was timely filed.

## II. *The Margin–of–Error Issue.*

Cripps' issue on appeal concerning the margin of error that inheres in the machine or device that was employed in the chemical test of his breath alcohol concentration is based on Iowa Code section 321J.12(6). That statute provides in relevant part:

> The results of a chemical test may not be used as the basis for a revocation of a person's motor vehicle license or nonresident operating privilege if the alcohol concentration indicated by the chemical test minus the established margin of error inherent in the device or method used to conduct the chemical test does not equal an alcohol concentration of .10 or more for violations under section 321J.2. . . .

Iowa Code § 321J.12(6) (1997).

At the hearing before the administrative law judge, Cripps presented testimony from an expert witness concerning the margin of error for the Intoxilyzer 4011A model as a class. This testimony was based both on the literature of the manufacturer and the witness's own test results. Based on these two sources of information, the witness concluded that the margin of error for the Intoxilyzer 4011A was .01.

IDOT sought to counter Cripps' evidence by producing the certified test results issued by the Iowa Department of Criminal Investigation Criminalistics Laboratory as to the accuracy of the particular Intoxilyzer 4011A used by the Webster City Police Department to analyze Cripps' breath sample. This evidence was offered pursuant to Iowa Code section 691.2, which provides in part:

> Any report, or copy of a report, or the findings of the criminalistics laboratory shall be received in evidence, if determined to be relevant, in any court, preliminary hearing, grand jury proceeding, civil proceeding, administrative hearing, and forfeiture proceeding in the same manner and with the same force and effect as if the employee or technician of the criminalistics laboratory who accomplished the requested analysis, comparison, or identification had testified in person.
>
> A party or the party's attorney may request that an employee or technician testify in person at a criminal trial, administrative hearing, or forfeiture proceeding on behalf of the state or the adverse agency of the state, by notifying the proper county attorney, or in the case of an administrative proceeding the

adverse agency, at least ten days before the date of the criminal trial, administrative hearing, or forfeiture proceeding. Cripps did not request that the person who tested the accuracy of the Intoxilyzer 4011A used by the Webster City Police Department appear in person and give testimony at the hearing.

In evaluating the evidence presented at the administrative hearing, the ALJ concluded:

It is the opinion of the administrative law judge that the statute refers to the margin of error for the entire class of testing devices and not to the margin of error for a specific testing device.

He further concluded:

The administrative law judge views the margin of error of a breath testing device to be the range within which all results would fall if the same breath specimen were tested many times.

Applying these conclusions to the testimony of Cripps' expert witness concerning the range of error for the Intoxilyzer 4011A as a class, the ALJ determined the applicable margin of error to be .01. That margin of error if subtracted from Cripps' test result of .106 produces a concentration less than .10. Based on that calculation, the ALJ determined that Cripps' license could not be revoked under section 321J.12(6).

On review of the ALJ's decision, the agency concluded that the margin of error to be applied under section 321J.12(6) is that which has been certified by the criminalistics laboratory for the particular device used in the chemical-testing process. In Cripps' case, the margin of error that had been certified by the criminalistics laboratory for the device at the Webster City Police Department was .004 (either way on the reading) or five percent (of the reading), whichever is greater. Adjusting Cripps' .106 test result based on that margin of error does not produce a concentration below .10. Based on these conclusions, the agency reversed the decision of the ALJ and upheld the revocation of Cripps' license.

In challenging the final agency decision, Cripps makes three arguments concerning the margin of error: (1) that it should be based on the range of error detected among this model of testing device as a generic class, (2) that it must be derived from testing the same breath specimen many times, and (3) that in the present case there was an internal contradiction in the certification of the criminalistics laboratory that distorted its determination of the margin of error for this particular Intoxilyzer 4011A. We consider each of these claims.

A. *May the margin of error be computed with respect to each particular device used in a chemical testing?* It appears from the record that each Intoxilyzer 4011A device used in this state is certified annually. This is required by Iowa Administrative Code rule 661— 7.2(1). As part of the certification process, the machine is examined to determine that it is functioning properly at a particular calibration, and a margin of error is established for that particular testing device when used at that calibration. The record in the present case is silent as to the method that was employed by the criminalistics laboratory to establish the margin of error for this particular Intoxilyzer 4011A.

Cripps urges that the term "margin of error inherent in the device or method used," as contained in section 321J.12(6), has reference to the range of error discovered among a category of testing devices as a class. We do not view this language as commanding that interpretation. In interpreting statutes, courts must seek a reasonable interpretation that will best effectuate the purpose of the legislation. *State v. Sullins,* 509 N.W.2d 483, 485 (Iowa 1993); *Harden v. State,* 434 N.W.2d 881, 884 (Iowa 1989). In the administration of this statute, what is sought to be obtained is a margin of error that would be inherent in the testing of the particular

subject's breath. There appears to be no logical basis for assuming that a margin of error obtained by charting the deviation from a known sample among various Intoxilyzer 4011A devices would be more useful for this purpose than establishing the deviation with respect to the particular device with which a subject is tested. We conclude that IDOT's reliance on the latter method of establishing the margin of error is not inconsistent with the purpose of the statute.

 B. *Whether the margin of error must be obtained by testing the same sample of breath many times.* Cripps urges that the ALJ's conclusion that the margin of error is the divergence of results obtained from the testing of the same sample of breath several times was the standard that should have been applied in the present case. He urges that the agency departed from that standard in basing his revocation on the criminalistics laboratory's certification. The method to be employed in establishing the margin of error is not specified in either the statute or the applicable administrative regulations. There is no evidence in the record with respect to the method that the criminalistics laboratory employed in fixing the margin of error for the Intoxilyzer 4011A used in the present case. We are convinced that Cripps may not establish that an improper method of testing was employed when he has presented no evidence of what that method was.

C. *Was there an inherent contradiction in the criminalistics laboratory certification?* Finally, we consider Cripps' claim that there is an inherent contradiction in the criminalistics laboratory certification of the margin of error for the Intoxilyzer 4011A used by the Webster City Police Department. He urges that this contradiction inheres in the portion of the certification, which states:

> The calibration filter Q–102232 will read $0.214 \pm 0.010$ when used with Intoxilyzer 4011A, serial number 27–102232.

Cripps urges that the margin of error for the testing accuracy of the machine must be at least as great as the range of calibration. There is nothing in the record from which we can verify that assertion. All that appears in this regard is that this particular Intoxilyzer 4011A device was to be used with a calibration filter programmed to read 0.214 plus or minus 0.01. The certification of the criminalistics laboratory attests that, if that calibration reads out on the machine, the Intoxilyzer 4011A will test accurately within a .004 or five percent margin of error. We perceive no facial inconsistency in that assertion. In the present case, the officer administering the chemical test testified that the calibration reading was within the range specified in the criminalistics laboratory's certification of accuracy.

We have considered all issues presented and conclude that the final agency decision was supported by substantial evidence. The judgment of the district court is affirmed.

**AFFIRMED.**

All justices concur except CADY, J., who takes no part.