[636 NYS2d 783]

In the Matter of Thomas Mullen, as Ancillary Executor of Elizabeth Mullen, Deceased, Respondent, v Gerald Linnane, Appellant, et al., Respondents.

First Department, January 25, 1996

APPEARANCES OF COUNSEL

*Richard B. Lind,* New York City, for appellant.
*Diahn W. McGrath,* New York City, for respondent.

## OPINION OF THE COURT

Per Curiam.

At issue on this appeal is whether petitioner, decedent's son and ancillary executor of her estate, has overcome the statutory presumption that certain joint bank accounts established by decedent were intended to vest property rights in his only sibling, Kathleen Linnane, the person named as joint account holder (Banking Law § 675), thereby constituting testamentary substitutes that pass outside the will. Compliance with the statutory requirements of Banking Law § 675 is not at issue on this appeal. To succeed, the law requires petitioner to establish, by clear and convincing evidence, that the accounts were opened for the convenience of decedent depositor, thus rendering the proceeds part of her estate. The proof adduced by petitioner, however, is not only inadequate and contradictory, it raises serious questions concerning the propriety of his conduct in this matter. The findings of the Surrogate, to the extent supported by the evidence of record, are largely irrelevant to the issue presented, and no reasonable view of the evidence supports the conclusion that the statutory presumption has been rebutted.

The five joint bank accounts at issue in this proceeding constitute part of 16 such accounts opened by decedent Elizabeth Mullen during April 1989. Eight of the accounts, totalling $216,842, designate as joint tenant her daughter, Kathleen Linnane, and the other eight, totalling $223,782, designate her son, petitioner Thomas Mullen, Jr. Also during April 1989, decedent consulted an attorney concerning the drafting of a will and, on May 1, 1989, decedent executed a will leaving a burial plot and her residual estate, including a two-family house in Whitestone, Queens, to her children or the survivor, should a child predecease her.

On July 20, 1990, petitioner Thomas Mullen, Jr. and his wife, Marjorie Mullen, removed decedent and some of her belongings—including jewelry, financial records and a strong box containing her bank books—to Fairhope, Baldwin County, Alabama, the State in which petitioner had resided for some 13 years. On the next business day, Monday, July 23, petitioner obtained decedent's signature on a durable power of attorney. Kathleen Linnane subsequently discovered that, on July 18 or 19, 1990, the balance of a savings account she held in joint name with decedent at Bayside Federal Savings Bank had been withdrawn, an amount exceeding $20,000. She later stated that this was the account used to pay her mother's everyday expenses.

Some indication of petitioner's design may be garnered from a report dated October 24, 1990 by Sidney F. Strauss, Esq., the guardian ad litem appointed for decedent by order of the Supreme Court, Queens County (Edwin Kassoff, J.): "It seems that subsequently, with the various passbooks in his possession as a result of taking the same from the Conservatee's home, he attempted to close all the accounts and transfer the monies to the Altus Bank in Alabama * * * only to find that the banks would not honor his request as they had previously been put on notice by the attorneys for [Kathleen Linnane] that such a request may not be proper. As a result of the banks' failure to comply, Mr. Mullen has instituted a Federal lawsuit naming the various banks, tellers, attorneys and others as co-conspirators collectively attempting to deprive him of these funds. In addition, Mr. Mullen, again without the proper authority, has also listed the Conservatee's home for sale with a real estate broker."

Over the course of the month following decedent's departure, Kathleen Linnane withdrew all funds from the accounts she held jointly with her mother and, according to her affidavit deposited them in accounts separate from her own or those of her husband, respondent Gerald Linnane. In October 1990, Kathleen was appointed conservator of her mother's assets in New York State by Judge Kassoff. However, Kathleen died on June 28, 1991, predeceasing her mother by over one year and, on August 21, 1991, petitioner was appointed conservator of decedent's assets by the Probate Court of Baldwin County, Alabama. Decedent died in October 1992, and her will was offered for probate before the Alabama Probate Court. Letters testamentary were issued to petitioner on November 13, 1992, and ancillary letters testamentary were issued to him by Surrogate's Court in a decree dated January 11, 1993.

This petition dated January 25, 1993 was filed pursuant to SCPA 2103 to require respondent Gerald Linnane to turn over five bank accounts previously held jointly with his late wife, Kathleen. Respondent filed a counterclaim in the nature of a setoff to recover $25,692.30 expended during the course of his wife's conservatorship. In a reply to the counterclaim, petitioner alleged that respondent converted $162,000 of decedent's funds in 1990.

Hearings were conducted on May 10 and 12, 1994, following which the Surrogate found that the joint accounts at issue are accounts of convenience, denominating as "belated" respondent's assertion of the statutory presumption of Banking Law § 675. The Surrogate's conclusion is premised largely upon an asserted admission by Kathleen Linnane that the proceeds of those joint accounts were transferred into other accounts "to be held for my mother's use and benefit." The Surrogate's decision also cites the "confidential relationship" that existed between decedent and respondent, who is described as "her accountant". Finally, the Surrogate found it significant that decedent's will leaves property only to her surviving child and that no gift tax returns have been filed by respondent on decedent's behalf.

None of these considerations has any bearing on the issue at bar. The statutory presumption is just that: there is no requirement that a presumption be raised as if it were an affirmative defense (*see*, CPLR 3211 [e]). To the contrary, the burden is on the party challenging the title of the survivor to provide clear and convincing evidence that the subject accounts were opened for the convenience of the decedent depositor (Banking Law § 675 [b]; *Matter of Coddington*, 56 AD2d 697, 698). Even a good-faith general denial is sufficient to require the proponent to meet his burden of proof (Siegel, NY Prac § 221, at 267, citing *Hoffstaedter v Carlton Auto Supplies Co.*, 203 App Div 494). Furthermore, in construing respondent's reliance upon the statutory presumption as "belated", the Surrogate conveniently overlooks petitioner's failure to raise the issue of conversion of the bank accounts until his reply affidavit in opposition to respondent's counterclaim (*see*, *Scherrer v Time Equities*, — AD2d — [1st Dept, Dec. 5, 1995]; *Lumbermens Mut. Cas. Co. v Morse Shoe Co.*, 218 AD2d 624, 626). It is therefore hardly surprising that respondent did not raise the issue in papers he submitted earlier.

On appeal, petitioner argues that Kathleen Linnane's affidavit was properly received as evidence of an admission

against interest. The subject affidavit dated November 3, 1990 was submitted to the United States District Court for the Southern District of Alabama, presumably in connection with Thomas Mullen's application to be appointed conservator of decedent's assets. In it, Kathleen states that she withdrew the funds on deposit in joint accounts naming herself and her mother and redeposited the funds in "bank accounts separate from my husband and my funds, to be held for my mother's use and benefit." Contrary to petitioner's contention, her statement is not an admission. Nor was it against her interest at the time it was made.

It is well settled that "from the moment of the creation of a joint account, a present unconditional property interest in an undivided one half of the moneys deposited devolves upon each tenant" (*Matter of Kleinberg v Heller*, 38 NY2d 836, 840-841 [Fuchsberg, J., concurring]). With respect to the funds on deposit, "each joint tenant has the right to a moiety or less for his or her own use" (*Warren v Warren*, 95 AD2d 807). Withdrawal of money from the account by one tenant "does not destroy the joint tenancy if one was properly created. It merely opens the door to competent evidence that no joint tenancy was intended to be created" (*Parry v Parry*, 93 AD2d 989, 990). The "withdrawal by one depositor of the whole fund or more than his moiety is some evidence that no true joint tenancy was intended (*Matter of Filfiley*, 63 Misc 2d 824, 827, affd 43 AD2d 981). However, such action, standing alone, is insufficient to overcome the presumption" (*Matter of Coddington, supra,* at 698-699). Moreover, where withdrawals in excess of the moiety are used for the support and care of the decedent, they are deemed to be "with her consent and for her benefit" (*Matter of Gilgore*, 55 AD2d 734, 735) and "the surviving tenant will not be required to return the excess to the decedent's estate" (*supra,* at 735).

As the cited authority makes clear, a joint tenant has the right to withdraw and use his or her one-half interest in the account. Withdrawal of more than that amount subjects the excess to suit for its recovery by the other joint tenant during the lifetime of both (*Matter of Kleinberg v Heller, supra,* at 842; *Warren v Warren, supra*) and results in the extinguishment of the right of survivorship to the half-interest of the other joint tenant (*Matter of Kleinberg v Heller, supra,* at 841-842; *Matter of Byrnes*, 85 AD2d 601, 602; *Commrade v Commrade*, 29 AD2d 871, 872).

This Court will not blind itself to the realities of this matter and ignore the untenable position in which Kathleen Linnane

was placed by petitioner's attempt to transfer the proceeds of the joint accounts set up by his mother to the Altus bank account. Immediately after his return to Alabama in July 1990, petitioner consolidated his control over three things that gave him virtually unfettered access to the joint accounts, including those established by decedent with her daughter: the bank books, decedent herself and decedent's power of attorney. He was thus in a position, as decedent's apparent agent, to obviate decedent's intent by arrogating to himself her access to and control over the funds maintained in those accounts. It is therefore not surprising that Kathleen Linnane found it prudent to move the funds to accounts under her control and beyond her brother's grasp.

In asserting that she placed the funds in accounts separate from those of herself and her husband, Kathleen Linnane claimed to do no less than this Court would expect of counsel to a party in a like situation—deposit the funds in a segregated account until such time as their status can be judicially determined (*see, Canron Corp. v City of New York*, 214 AD2d 115, 118). In view of precipitating events, the statement that the funds were "to be held for my mother's use and benefit" is, at most, equivocal. As an acknowledgement that the funds were not entirely Kathleen's property to do with as she pleased, the statement advances the objective of preserving her survivorship rights to her mother's joint interest in the accounts. As such, it is a statement in her best interest, not a declaration against that interest. At the very least, it can be said that Kathleen had no awareness, at the time of her declaration, that it was inimical to her property interest in the funds (Richardson, Evidence § 257, at 225 [Prince 10th ed]; *Ellis v Allstate Ins. Co.*, 97 AD2d 970). In the context of the proceeding in which it was made, the statement may also have been intended to assure the Alabama District Court that Kathleen, as conservator, had access to sufficient funds to meet any financial emergency that might arise. Be that as it may, the declarant is unavailable to offer any explanation of its meaning (*see*, Richardson, Evidence § 228, at 203 [Prince 10th ed]), the statement is not a declaration against interest as a matter of law, and it was improperly construed as evidence of the ownership of the disputed funds.

■ Contrary to petitioner's contention on appeal, there is no evidence to support his conclusion that Kathleen Linnane had a fiduciary relationship with her mother, nor did the Surrogate find as much. That respondent Gerald Linnane had a confiden-

tial relationship with decedent, to the extent that it might be supported by the record, is irrelevant since respondent was never a joint tenant to any account maintained by decedent. Similarly, Gerald's opinion of the nature and purpose of the joint accounts is immaterial to the question of decedent's intent in setting up those accounts. His statement, offered to support petitioner's contention that the joint accounts were merely for decedent's convenience, is notable for its source as well as its content: "Thomas [petitioner] suggested that the bank accounts be transferred into joint accounts in the names of Elizabeth Mullen and Kathleen Mullen *[sic]* or Thomas Mullen. Thomas told me such an arrangement would ensure that Kathleen or Thomas had access to the funds in the event their mother became ill and needed money for medical expenses." This statement is both hearsay and represents no more than a restatement of petitioner's own purported intent with respect to the opening of the joint accounts. It is clearly not probative. Respondent's understanding of and even acquiescence in petitioner's perception of the purpose of the joint accounts sheds absolutely no light on the pertinent consideration in this matter, that being *decedent's* purpose in establishing the joint accounts.

According to the Surrogate, decedent's intent is expressed by her will, which leaves her residual estate to her surviving child, petitioner Thomas Mullen. From the terms of this instrument, the Surrogate concludes that decedent intended none of her property to go to her daughter's family should Kathleen Linnane predecease her. To uphold this reasoning, however, this Court would be required to adopt the position that decedent desired all her property to pass in accordance with her will, a presumption that is directly contradicted by the evidence and contrary to law (Banking Law § 675).

Had decedent desired that the disposition of the bank accounts be made in accordance with the terms of her will, she undoubtedly would have instructed her attorney to insert such a provision. On this point, we regard it as curious that, during the very month her attorney was drafting her will, decedent methodically established 16 joint accounts in nine different banks, eight with each of her children, dividing her liquid assets evenly between them. We emphasize that there is no suggestion in the record that decedent was not competent to make a will. To the contrary, there is testimony and a letter from her attorney establishing that decedent made changes to the instrument, requiring the preparation of a second draft, which

she ultimately executed. Therefore, there is no evidence to suggest that decedent was not competent to simultaneously establish the accounts at issue (*cf., Matter of Steinberg*, 107 AD2d 811, *lv denied* 64 NY2d 611).

The opening of the joint accounts contemporaneously with the disposition of her real property under the will indicates quite plainly decedent's intent that the money pass outside her will. Evidence as to decedent's disposition of real property under her will is irrelevant to her purpose with respect to personal property passing outside the will, and the testimony of her attorney is not competent to prove that purpose (CPLR 4503 [b]). Finally, we note that there is no inherent inconsistency in providing for dissimilar disposition of real property and liquid assets (*cf., Matter of Coppola*, 189 AD2d 933).

The failure of respondent to file a gift tax return for half the money deposited by decedent into joint accounts with her daughter is a matter best consigned to the appropriate taxing authorities. That respondent might not have deemed it advisable to file returns has no bearing on decedent's intent to create a joint tenancy. It would be highly irregular to regard any post facto omission by decedent's accountant, as the Surrogate portrays him, either as being representative of decedent's wishes or as relating back to the time of the creation of the statutory joint tenancies (*see, Matter of Harrison*, 184 AD2d 42, 45-46).

Particularly disturbing in this case is the failure to undertake any inquiry concerning petitioner's role in the events leading up to Kathleen Linnane's withdrawal of funds from the accounts held in joint name with her mother. While it has not been established that Elizabeth Mullen was taken by petitioner from her home of 35 years against her will, the contradictory evidence concerning decedent's grant of her power of attorney to petitioner does not serve to instill confidence in his role as fiduciary. During her testimony before the Surrogate, Marjorie Mullen, petitioner's wife, made some unconvincing and inconsistent statements regarding decedent's competence and the necessity to obtain her power of attorney. Mrs. Mullen testified that her mother-in-law "couldn't fill out papers. She would sign her name, still sign her name at that time. But she would want me to fill out the papers or my husband." Shortly thereafter, she stated, "Well, at that time, she didn't have any papers to fill out." Pressed for an explanation, she offered, "I, I would think, at that time, then the only need for a guardian *[sic]* would probably have been for writing checks or being able

to sign." Asked what would make her unable to write checks, in particular, Mrs. Mullen stated, "She just didn't do it. I don't know that she couldn't have."

Other evidence of record insinuates strongly that decedent was mentally incompetent to grant petitioner a durable power of attorney at the time. The affidavit of William Bingham, M.D., dated August 31, 1990, submitted by petitioner in connection with his petition to be appointed conservator, states that decedent suffers from Alzheimer's disease and senile dementia and "is unable to handle her own affairs". The doctor's opinion hardly invites the conclusion that decedent was fully competent to execute a power of attorney in favor of petitioner a mere six weeks earlier.

The record on appeal suggests to this Court that the probable explanation for petitioner's behavior with respect to his mother's assets is simple avarice. Whatever motives might be ascribed to petitioner, however, it remains that his conduct was the immediate and efficient cause of the disputed transfer of funds by Kathleen Linnane. As a matter of equity, having placed his sister in an awkward legal situation, petitioner will not be heard to argue that her reasonable precautions to preserve her interest in the subject funds should result in the forfeiture of that interest.

Accordingly, the decree of the Surrogate's Court, New York County (Eve Preminger, S.), entered on or about February 6, 1995, which, after nonjury trial, granted the ancillary executor's petition for turnover of the proceeds of five bank accounts pursuant to SCPA 2103, should be reversed, on the law and the facts, and the decree vacated, without costs. This matter is remanded to Surrogate's Court for calculation of the amount of the parties' interest in the five joint accounts at issue, taking into consideration the respective interest of Kathleen Linnane and decedent in the eight bank accounts opened jointly in their names.

ELLERIN, J. P., RUBIN, NARDELLI, WILLIAMS and MAZZARELLI, JJ., concur.

Decree, Surrogate's Court, New York County, entered on or about February 6, 1995, which, after a nonjury trial, granted the ancillary executor's petition for turnover of the proceeds of bank accounts pursuant to SCPA 2103, reversed, on the law and the facts, without costs, and the decree vacated. [As amended by unpublished order entered Apr. 4, 1996.]