Robert L. KETTLER, As Executor of the Estate of Loretta C. O'Connell, and Milo J. Kettler and Robert L. Kettler, Individually, Plaintiffs–Appellees,

v.

The SECURITY NATIONAL BANK OF SIOUX CITY, Iowa, as Personal Representative of the Estate of Fay M. O'Connell, Deceased, and Robin Franciscovich, As Administrator of the Estate of Mary Ann Raher, Defendants–Appellants.

In the Matter of the Estate of Fay M. O'Connell, Deceased.

No. 10–1803.

Court of Appeals of Iowa.

Sept. 21, 2011.

Daniel L. Hartnett and Larry A. Storm of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett & Storm, P.C., Sioux City, for appellees.

Kyle S. Irvin of Corbett, Anderson, Corbett, Vellinga & Irvin, L.L.P., Sioux City, for appellant The Security National Bank of Sioux City, Iowa.

Jay E. Denne of Munger, Reinschmidt & Denne, L.L.P., Sioux City, for appellant Robin Franciscovich.

Heard by SACKETT, C.J., and VOGEL and DANILSON, JJ.

VOGEL, J.

In this appeal we examine a case where a joint bank account holder unilaterally withdrew funds from several accounts and placed them in his own name. The district court found this action did not destroy the right of survivorship held by his wife and ordered the return of all the funds to the wife. We conclude that because the withdrawals were valid transactions made with the intent to terminate the right of survivorship that right was successfully destroyed. However, the wife's claim for conversion should be upheld for her proportional interest (fifty-percent) of the withdrawn funds. We reverse and remand.

## I. Background Facts and Proceedings.

Fay and Loretta O'Connell were married in 1940, and owned their residence along with several bank accounts as joint tenants, with full rights of survivorship. They had no children. Loretta had a sister, Mary Ann Raher, and two brothers, Milo Kettler and Robert Kettler.

On November 21, 2005, the couple executed wills, both directing the residue of their estates pass to the survivor. On the second death, after certain specific bequests, the residual estate would pass to Milo and Robert. Loretta's sister was not included as a beneficiary in the residual estate of either Fay or Loretta, but was to receive $10,000 under Loretta's will. On that same date, Loretta signed a power of attorney form, appointing Fay as her attorney-in-fact, with Milo and Robert as successor attorneys-in-fact.

In the summer of 2007, Loretta began suffering the debilitating effects of Alzheimer's disease, while Fay suffered from a terminal illness. Milo and Loretta's niece, Margaret Woolworth, filed an application alleging Fay was seriously mentally impaired pursuant to Iowa Code section 229.6 (2007). The primary allegations supporting the application were Fay's confusion, deteriorating health, and inability to care for Loretta. After an examination by a physician and a finding of no serious mental impairment, the application was dismissed. While Fay was involuntarily held for seventy-two hours, Loretta was moved into a nursing home by Milo and Margaret. It appears this motivated Fay to take action to change his will and take full control of the couple's assets.

Fay requested Mary Ann come from her home in the state of Washington to Iowa, and paid for her travel. While accompanied by Mary Ann, Fay went to the banks where he and Loretta had joint accounts and withdrew all the funds from those accounts.[1] Fay deposited the funds into

---

1.  One account was jointly held by Fay, Loretta, Milo, and Robert. The accounts had the approximate face value of: (1) $100,000 certificate of deposit at American Bank, jointly held by Fay and Loretta; (2) $100,000 certificate of deposit at Farmers Savings Bank, jointly held by Fay and Loretta; (3) $100,000 certificate of deposit, jointly held by Fay and Loretta, and $100,000 certificate of deposit, jointly held by Fay and Loretta and payable-on-death to Milo, both at First National Bank of Le Mars; (4) $150,000 certificate of deposit at Primebank, jointly held by Fay, Loretta, Milo, and Robert; and (5) $85,000 money market account at Vantus (f/k/a First Federal) Bank, jointly held by Fay and Loretta.

new accounts in his name alone, and designated all but the money market account as payable-on-death to Mary Ann. Additionally, Fay executed a general power of attorney designating Mary Ann as Fay's attorney in fact. He also changed his will by setting up a trust for the care of Loretta, if she survived him. If Loretta did not survive him or upon Loretta's death, after certain bequests, the balance of the trust assets was left to Mary Ann. Milo and Robert were no longer beneficiaries under the new will, and Fay's attorney later testified that Fay "was very insistent he wanted nothing to go to them. And that was one of the reasons for the change in his will." The Security National Bank (SNB) was nominated as executor and trustee.[2]

Fay died on August 9, 2007. In October 2007, Loretta,[3] Milo, and Robert filed a petition naming the personal representative of Fay's estate, Security National Bank (SNB), and Mary Ann[4] as defendants. The petition alleged various claims, but relevant to this appeal, alleged conversion of Loretta's property by Fay and Mary Ann. Numerous motions, hearings, and rulings over the course of the last several years appear in the record on appeal.[5]

In February 2009, the district court issued a summary judgment ruling. The district court found that in July 2007, Fay attempted to take sole ownership of the accounts, but also "expressed an intention to ensure that care and support was provided to Loretta upon his death." This was evidenced by a handwritten note stating that Mary Ann was to be responsible for Loretta's care after his death and a provision of his will directing a trust be created from all the assets of his estate be used for the benefit of Loretta.[6] The district court noted that Fay's withdrawal of the funds from the accounts would be impermissible if he acted under the power of attorney Loretta had given him, but he had not done so as "Fay signed only his name and did not indicate whether he was signing for himself or for both himself and as Loretta's attorney-in-fact." Therefore the court analyzed the transactions as Fay acting as a joint tenant, and not as Loretta's attorney-in-fact.

The district court found that Fay did not intend to "sever" the joint tenancy and create a tenancy in common. Further, Fay could not "destroy" the joint tenancy by converting assets into his separate property. It stated,

2. Fay took other actions, including, giving Mary Ann a $9000 cash gift and transferring the title to two vehicles to her. Fay also went to the nursing home where Loretta was being cared for and secured her signature on a deed granting Fay sole title to their homestead. The district court found the deed was void and vested title in Loretta. None of these transfers are raised on appeal.

3. Loretta died on June 13, 2010. Robert was appointed as executor of her estate, and was substituted as the plaintiff in this litigation. For consistency, we will refer to Robert, as administrator of the Estate of Loretta C. O'Connell, as "Loretta."

4. Mary Ann died on November 15, 2009. Her daughter, Robin Franciscovich was appointed

as administrator of her estate and was substituted as the defendant in this litigation. For consistency, we will refer to Franciscovich, as administrator of the Estate of Mary Ann Raher, as "Mary Ann."

5. On November 15, 2007, the district court entered an injunction prohibiting the SNB from disposing of the assets at issue and ordering SNB to pay Loretta an allowance of $5000 per month for twelve months. The petition was later amended in March 2009.

6. Excluding both the homestead and assets which were payable-on-death to Mary Ann, Fay's probate inventory shows an approximate gross estate of $103,472.

[W]hen a co-tenant attempts to withdraw all or substantially all of the funds of a joint account, many jurisdictions refuse to give effect to that action. This rule, [commonly referred to as the] "New York" rule, holds that there is not a change in the joint ownership of the accounts, nor does the right of survivorship for the other co-tenants terminate. More importantly, again, the court is aware of no case law in Iowa which supports the right of one co-tenant to withdraw all or substantially all of the funds in an account, unless it is specifically authorized by the other joint tenants. In fact, Iowa case law points to the contrary conclusion: That an unauthorized, unilateral withdrawal of account funds is essentially a void action, and the parties' rights to the monies and the joint tenancy endure.

(Citations omitted.) The district court found that because Fay did not intend to sever and could not destroy the joint tenancy, the assets remained held in joint tenancy with rights of survivorship in Loretta.

On October 20, 2010, the most recent "final" ruling was entered, which incorporated portions of prior rulings. The district court entered judgment in favor of the plaintiffs on their conversion claims. The court found,

> [T]he transfers of ownership effectuated by Fay O'Connell prior to his death in regard to the bank accounts and certificates of deposit are void, and the ownership of said accounts/CDs shall be restored to the status existing immediately preceding such transfers. . . . Accordingly, any ownership rights that Loretta O'Connell, Milo Kettler, and Robert Kettler had to those accounts/CDs immediately prior to Fay O'Connell's predeath transfers are declared to be paramount and superior to any interests in said accounts asserted by Raher or SNB, as Executor of the Estate of Fay O'Connell.

Mary Ann and SNB appeal from this order. They both assert that the district court erred in declaring Fay's actions in withdrawing funds from the joint accounts were void. Mary Ann argues that the accounts should have been awarded to her as the payable-on-death beneficiary. She alternatively argues that one-half of the funds in the former joint accounts should have been awarded to her. SNB argues that Fay should have been able to retain his proportional interest in the accounts.

## II. Scope of Review.

■ All parties agree we have de novo review. *In re Estate of Woodroffe*, 742 N.W.2d 94, 102 (Iowa 2007) ("The declaratory judgment action brought in [the decedent's] estate is a matter 'tried by the probate court as a proceeding in equity,' Iowa Code § 633.33 (2007), and our review in such cases is de novo. Iowa R.App. P. [6.904]."). "We give deference to the factual findings of the court but are not bound by them. Of course, under a de novo review we will make our own legal conclusions, as we are not bound by and give no deference to the trial court's conclusions of law." *In re Estate of Johnson*, 739 N.W.2d 493, 496 (Iowa 2007).

## III. Joint Tenancy.

■ "Joint tenancy property is property held by two or more parties jointly, with equal rights to share in the enjoyment of the whole property during their lives, and a right of survivorship which allows the surviving party to enjoy the entire estate." *In re Estate of Thomann*, 649 N.W.2d 1, 5–6 (Iowa 2002). A joint tenant's right to the joint tenancy property can be described as "an undivided interest in the entire estate to which is attached the right of survivorship." *Brown v. Von-*

*nahme,* 343 N.W.2d 445, 451 (Iowa 1984). There are two separate features of joint tenancy, the "proportional interest" in the undivided interest in the property and the "accretive interest" in the right of survivorship. *Thomann,* 649 N.W.2d at 6.

"Notwithstanding the undivided nature of the tenants' proportional interests, each tenant's precise share of the undivided interest may be determined." *Id.*

The rights of the individual joint tenants must be determined from their agreement. Generally, the respective rights of the parties to a joint bank account are determined by the rules of contract law, and the intent of the parties with respect to the joint [bank] account is controlling. Each joint tenant is presumed to own an equal share in the joint bank account; however, this presumption is rebuttable.

*Anderson v. Iowa Dep't of Human Servs.,* 368 N.W.2d 104, 109 (Iowa 1985). A joint tenancy may be severed by the actions of one or both of the joint tenants. *Thomann,* 649 N.W.2d at 6. Any severance of joint tenancy creates a tenancy in common. *Id.*

Traditionally, Iowa followed the four unities of title test, that is to create a joint tenancy the four unities had to be present—interest, title, time, and possession. *Johnson,* 739 N.W.2d at 496. "To sever or terminate a joint tenancy, a joint tenant simply had to destroy one of the unities." *Id.* at 496–97. That changed with the *Johnson* opinion, when our supreme court rejected the "four unities of title" test and adopted an "intent-based approach" in determining whether a joint tenancy had been created, severed, or terminated. *Id.* at 497–98. Under the intent-based test, a court is not permitted "to determine the intent of a party under the facts and then fulfill it." *Id.* at 498.

"Instead, it seems fundamental that intent must be derived from an instrument effectuating the intent to sever the joint tenancy." *Id.* at 498–99.

In *Johnson,* the supreme court examined joint tenancy in the context of a homestead. *Id.* at 494. In that case, a husband and wife owned a homestead as joint tenants with rights of survivorship. *Id.* The wife became ill and her family members attempted to convey her property to the husband, under the assumption that he would survive her. *Id.* A quit claim deed was prepared to convey the husband and wife's interest in their homestead solely to the husband. *Id.* at 495. The husband promptly signed the deed. *Id.* The wife, however, did not immediately sign the deed. *Id.* Although incompetent, a power of attorney was prepared that attempted to give her daughter the authority to sign the deed on her behalf, which the daughter then did. *Id.* On appeal, there was no question that the wife's incompetence rendered the conveyance of her interest invalid. *Id.* at 499. Additionally, our statute granting homestead rights prevented the husband from conveying his interest without the wife's participation, rendering the husbands conveyance of his interest also invalid. *Id.* (citing Iowa Code § 561.13). Consequently the "deed was totally void." *Id.* The issue on appeal was whether a void deed could sever the joint tenancy in homestead property. *Id.* The supreme court found that the husband did not have the intent to sever the joint tenancy, rather he had the intent to destroy it. More importantly the court found an invalid conveyance could not establish the intent to sever or destroy a joint tenancy. *Id.* at 501.

There are important distinctions between *Johnson* and the present case, namely the validity of the initial transaction and the type of property owned. In

the present case, the bank accounts were held in joint tenancy, with both Fay and Loretta having an undivided interest in the entire estate. *See Anderson*, 368 N.W.2d at 109. Each joint tenant was permitted to make withdrawals from the account, as was specified in the account agreement. Ultimately, one joint tenant was permitted to deplete the account. *See also* Iowa Code § 524.806 (authorizing one party to withdraw the entirety of a bank account). Consequently, the initial transactions—the withdrawals of funds—was valid and could support the termination of the joint tenancy, unlike *Johnson*, in which the initial transaction was void.

"Under an intent-based test, it is fundamental that the underlying instrument must effectuate the intent to sever." *Johnson*, 739 N.W.2d at 500. Two separate rights are associated with the bank account—a right of survivorship and a right to the proportional share of the funds. *Thomann*, 649 N.W.2d at 6. Essentially, the right of survivorship is dependent on both joint tenants continuing to agree to hold the property in that fashion. *Id.* (explaining a joint tenancy may be severed by one joint tenant). Fay clearly demonstrated his intent that the funds no longer be held in the joint tenancies. First, he withdrew all of the funds. He then deposited both his and Loretta's proportional interests into accounts in his name only and payable-on-death to Mary Ann.

The district court discussed the distinction between the intent to "sever" and to "destroy" a joint tenancy noted in the *Johnson* case and applied what it referred to as "the New York rule." It then found that because Fay withdrew all the funds in the accounts, he did not intend to merely "sever" the joint tenancies to create a tenancy in common, but rather intended to "destroy" the joint tenancies by taking all

the funds and putting them under his sole control. Because the court determined Fay could not "destroy" the joint tenancies, it invalided the withdrawals from the various accounts, and found "the transfers of ownership effectuated by Fay ... in regard to the bank accounts and certificates of deposit are void." The court then ordered the restoration of all the funds to Loretta, with her full rights of survivorship.

We part company with the district court's rationale, as under Iowa law the right of survivorship and the right to the proportional share are two separate rights attendant to a joint tenancy account. *See Thomann*, 649 N.W.2d at 6. Each joint tenant has an undivided interest in the entire account, but each joint tenant's proportional share may be determined. *Id.* In a case where a joint tenant makes a valid withdrawal, of more than his proportional share, the remedy is not to invalidate the entire transaction. *Anderson*, 368 N.W.2d at 110 ("[A] cotenant may not withdraw from the account in excess of his interest; if he has done so, he is liable to the other joint tenant for the excess so withdrawn." (citations and internal quotations omitted)). Rather, the remedy is a suit between the joint tenants to recover the funds taken in excess of the withdrawing joint tenant's proportional share. *Id.*

While the *Johnson* court noted a distinction between intent to "sever" and intent to "destroy" a joint tenancy, it was in the context of real property and not a fungible asset such as a bank account. *See Johnson*, 739 N.W.2d at 500. Severance was described as converting the joint tenancy into a tenancy in common, whereas destroying the joint tenancy was described as taking sole title to the real property. *Id.* at 500 & n. 11. This distinction is not easily applied to bank accounts because of specific statutes applicable to different

types of property, one protecting homestead property, Iowa Code section 561.13, and one protecting banking institutions, Iowa Code section 524.806.

■■■ We also note the application of the "New York rule" is not consistent with Iowa law.[7] Under the New York rule,

One tenant may not unilaterally sever the joint tenancy by appropriating the entire property for personal use. However, in the case of personal property which is severable, one of the joint tenants may sever the tenancy, putting an end to the incident of survivorship, by taking and using a moiety or less of the common property.

One joint tenant may withdraw or alienate his or her one-half share, but no more, with the survivor taking all upon death of the other. With respect to a joint bank account, a moiety or less may be taken without affecting the right of survivorship as to the remainder. Where more than a one-half interest in a joint bank account is withdrawn by a joint tenant, however, the excess may be subjected to a suit for recovery by the other joint tenant and will extinguish the right of survivorship.

24 N.Y. Jur.2d Cotenancy and Partition § 35; *In re Estate of Hunt,* 65 Misc.2d 827, 319 N.Y.S.2d 320, 322 (N.Y.Sur.1971) (holding that where the decedent withdrew and cashed savings bonds held in joint tenancy and placed the funds in an account solely in his name, any intent to keep the character of the joint ownership was surely negated and the joint tenant was only entitled to one-half the proceeds); *but see Kleinberg v. Heller,* 38 N.Y.2d 836, 382

---

**7.** In Iowa, each joint tenant's share may be determined according to the agreement or contract. *Anderson,* 368 N.W.2d at 109 ("Generally, the respective rights of the parties to a joint bank account are determined by the rules of contract law, and the intent of the parties with respect to the joint savings account is controlling."). However, under a New York statute, there is a presumption that parties opening a joint bank account are creating a joint tenancy with rights of survivorship. N.Y. Banking Law § 675 (McKinney 2011); *see also* 24 N.Y. Jur.2d Cotenancy and Partition § 32 ("There is a presumption that joint savings accounts maintained in the names of two parties, payable to either or the survivor, are held as joint tenants by the parties named as depositors, whatever the source of the deposit, and each is entitled to a moiety beyond which he or she may not, without consent, withdraw funds for his or her own use or purpose."). When a joint tenant deposits funds into the account, one-half of the funds are presumed to be a gift to the other joint tenant. Carolyn Satenberg, Joint Bank Accounts in New York: Confusion, Discrimination, and the Need for Change, 9 Cardozo Pub.L. Pol'y & Ethics J. 607, 621 (2011). Consequently, a joint tenant may be entitled to one-half the funds regardless of the amount they contributed to the account. *Id.; In re Mullen,* 268 A.D.2d 313, 314, 702 N.Y.S.2d 35 (N.Y.App.Div.2000) (explaining that upon creation of a joint account, a joint tenant obtains an immediate right to withdraw her moiety of the account; upon withdrawal of an excess over moiety, the withdrawing joint tenant becomes subject to suit for excess and the joint tenancy is extinguished). Therefore,

a joint tenant has the right to withdraw and use his or her one-half interest in the account. Withdrawal of more than that amount subjects the excess to suit for its recovery by the other joint tenant during the lifetime of both and results in the extinguishment of the right of survivorship to the half-interest of the other joint tenant.

*Application of Mullen,* 218 A.D.2d 50, 636 N.Y.S.2d 783, 786 (1996).

In *In re Filfiley's Will,* 63 Misc.2d 824, 313 N.Y.S.2d 793, 796–98 (N.Y.Sur.1970), the court explained, that most states have adopted a statutory "contract" status for bank accounts, which permits withdrawals by one or both of the account holders and the deposit agreement provides for rights of survivorship, and those states have few problems. However, the court further explained that New York's statutory created "joint tenancy" "caused difficulties for the courts not evident in other states." *Filfiley,* 313 N.Y.S.2d at 796.

N.Y.S.2d 49, 345 N.E.2d 592, 596 (1976) (Fuchsberg, J., concurring) ("There are those who prefer not to resort to such indices of agreement for the determination of such cases, favoring instead the supposed greater certainty of a rule under which inviolability of the right of survivorship to all funds withdrawn in excess of tenant's own moiety is maintained by the legal fiction of regarding the withdrawal as though never made and, therefore, a nullity."); *In re Filfiley's Will*, 63 Misc.2d 824, 313 N.Y.S.2d 793, 796–98 (N.Y.Sur.1970) (explaining that when a joint tenant withdraws more than his proportional share then the funds keep their character as joint tenancy "no matter into what form converted"). Even if the rule applied to bank accounts, it would be inconsistent with Iowa's intent-based approach and joint tenancy characteristics. Under the New York rule, the joint tenant essentially forfeits his right to terminate the joint tenancy and the whole transaction is treated as void, regardless of his intent to terminate the joint tenancy. *See Filfiley*, 313 N.Y.S.2d at 796–98. New York recognizes tenancy by the entirety, and the New York rule essentially extends this concept to joint tenancy by not permitting one joint tenant to terminate the right of survivorship under certain circumstances. *See* 41 Am.Jur.2d *Husband and Wife* § 18 (2011) (defining a tenancy by the entirety as ownership where a husband and wife own property as a single entity, by which they "take the whole estate as a single person with the right of survivorship"); § 32 (explaining that, during the lifetime of the parties so long as the spouses remain married, a tenancy by the entirety "may be terminated or severed only by joint and mutual action" and cannot be severed "by the unilateral act of either spouse"). Iowa law does not recognize tenancy by the entirety, and each joint tenant retains a right to terminate the joint tenancy and to do what each wishes to do with his or her proportional share of the account. *Johnson*, 739 N.W.2d at 500 n. 11 ("[T]enancy in the entirety [is] a form of ownership we have refused to recognize in prior cases."). We find the application of the New York rule was in error.

From his actions it is clear Fay intended to terminate Loretta's right of survivorship to the joint tenancy funds. Even though the withdrawals from the joint tenancy accounts were valid transactions, this does not determine nor destroy the proportional interests as between Fay and Loretta. *See Petersen v. Carstensen*, 249 N.W.2d 622, 625 (Iowa 1977) (explaining that Iowa Code section 524.806 was primarily "enacted to protect the depository bank rather than to establish ownership of the deposit"). Fay had a right to withdraw all of the funds and even to take control of all of the funds. However, he did so at the risk of Loretta claiming her proportionate share. The presumption is that each party has an interest in one-half of the funds in a joint tenancy account. *Anderson*, 368 N.W.2d at 109. Although this may be rebutted, it was not rebutted in the proceedings below nor raised on appeal.[8] Consequently, Loretta may recover the amount Fay withdrew from each of the accounts in excess of his fifty-percent share of the monies withdrawn, plus interest accrued.

## IV. Conclusion.

We therefore reverse that portion of the district court ruling which invalidated the withdrawal of the joint tenancy funds by Fay. The withdrawals were valid transactions by Fay, one of the joint tenants.

---

8. The parties stated at oral argument that there was no dispute that Fay and Loretta each owned fifty-percent of the funds.

However, while Fay was successful in destroying the accretive or survivorship rights to the various joint tenancy accounts, Loretta's claim of conversion should be upheld for fifty-percent of the funds withdrawn. We reverse and remand.

**REVERSED AND REMANDED.**

DANILSON, J., concurs.

SACKETT, C.J., specially concurs.

SACKETT, C.J. (concurring specially).

I concur specially without opinion.