**IN THE COURT OF APPEALS OF IOWA**

No. 15-1317
Filed August 17, 2016

**IN THE MATTER OF THE ESTATE OF
VICTORIA NICKLES, Deceased.**

**GLEN DEZIEL, Individually and as
Executor,**
        Petitioner-Appellant/Cross-Appellee,

**vs.**

**JAMES CHIMBIDIS,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, DeDra

Schroeder, Judge.


        The executor of an estate appeals an order reducing requested statutory

fees and, in his individual capacity, contests the denial of his motion to refund

money removed from a joint bank account by the conservator for the testator.

**AFFIRMED.**


        William L. Kutmus of Kutmus, Pennington & Hook, P.C., West Des

Moines, and  Steven Paul DeVolder, Norwalk, for appellant in his individual

capacity.

        Richard Norton Tompkins, Jr. of Tompkins Law Office, Mason City, for

appellant in his capacity as executor.

Randall Eugene Nielsen of Pappajohn, Shriver, Eide & Nielsen, P.C., Mason City, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

Glen DeZiel raises two challenges to a district court order issued in probate proceedings for the estate of Victoria Nickles. In his individual capacity, DeZiel contests the denial of his "motion to rectify money removed from joint account by conservator." In his capacity as executor, DeZiel challenges the reduction of his requested statutory fees under Iowa Code sections 633.197 and 633.198 (2013). Beneficiary James Chimbidis defends the district court's order regarding the joint checking account. On the fee issue, Chimbidis cross appeals seeking a more substantial reduction in the award.

Because the evidence elicited by Chimbidis rebutted the presumption of proportional interest in the joint checking account, we affirm the order declining to refund any portion of the $250,000 removed from the account by the conservator and now in Nickles's estate. We also find the fee awards to be reasonable. Accordingly, we affirm on the appeal and cross appeal.

## I.    Facts and Prior Proceedings

Glen DeZiel[1] and his wife Marie met Victoria Nickles in 2002 through Nickles's nephew, Leo Chimbidis. DeZiel befriended Leo, meeting for coffee and taking him to doctors' appointments when he faced a cancer diagnosis. When Leo died in 2004, DeZiel helped Leo's brother, James Chimbidis,[2] with funeral arrangements.

According to DeZiel, Nickles appreciated his loyalty to her nephew Leo, so she nominated DeZiel as executor of her estate, valued at approximately $3.5

---

[1] For simplicity's sake, throughout this opinion we will use the surname DeZiel to refer to Glen DeZiel.
[2] We will use the surname Chimbidis to refer to James Chimbidis.

million, and named Glen and Marie DeZiel as residual beneficiaries in her will revised in 2007.[3]  That same year, she appointed DeZiel as her power of attorney and opened a joint checking account with him.

DeZiel testified:

[S]he wanted me to pay her bills, basically.  And so she said, "Let's go to the bank, and I'm going to put an account—have an account with you and I in there."  And so we went there.  And she put the money in there.  And she said, "Glen, if you ever need any money, that's your money."

DeZiel testified he paid thousands of dollars from the joint account toward Nickles's nursing home care and other bills, "whatever she had due," but never took money out for himself, "not one dime."  He said he told Nickles: "It's your money."

Three years later, the court appointed the First Citizens Trust Company to be conservator for then eighty-nine-year-old Nickles, ending DeZiel's power of attorney.  The balance in their joint account was $254,079.02 as of March 8, 2010.  A few days later, on March 12, the conservator withdrew $250,000 from the account without consulting with DeZiel.[4]

Nickles died on October 4, 2011.  Her conservatorship closed on July 16, 2012, by order of the court.  The $250,000 transfer from the joint checking account into the conservatorship was intermingled with other assets in the estate. DeZiel received $57,000 that remained in the joint checking account after Nickles's death.

---

[3] The will also bequeathed $20,000 to her nephew James Chimbidis.
[4] The initial report and inventory for the conservatorship filed June 1, 2010, did not reflect the $250,000 transfer from the checking account.

In February 2012, Chimbidis filed an action challenging Nickles's will on the basis of testator incompetence and undue influence by the DeZiels. The will contest was settled in October 2013 when Chimbidis and the DeZiels reached a mediation agreement under which each would receive half the residuary share of Nickles's estate.

One year later, in October 2014, DeZiel filed a "motion to rectify money removed from joint account." In that same month, the attorney for the estate filed an application for statutory fees for the executor and attorney in the maximum amount of $69,582 each. After a hearing, the court denied the "motion to rectify", holding "the rebuttable presumption of joint tenancy in this bank account has been overcome by substantial and sufficient evidence." In the same order, the court considered the fee application. Citing several reasons for reducing the request, the court determined the executor and attorney should each receive fees in the amount of $39,000. DeZiel appeals both as executor and in his individual capacity. Chimbidis cross appeals on the fee awards.

## II.    Scope and Standards of Review

We review de novo the district court's order concerning the joint bank account because it arose from an equitable proceeding under Iowa Code section 633.33. *See Kettler v. Sec. Nat'l Bank of Sioux City*, 805 N.W.2d 817, 821 (Iowa Ct. App. 2011) (reviewing conversion claim regarding withdrawal from joint bank account in probate proceedings). We give weight to the court's fact-findings but are not bound by them. *In re Estate of Serovy*, 711 N.W.2d 290, 293 (Iowa 2006).

Likewise, our review of the award of executor and attorney fees is de novo. *In re Estate of Bockwoldt*, 814 N.W.2d 215, 221 (Iowa 2012). But we recognize the district court has considerable discretion in allowing compensation for executors and their attorneys. *See In re Estate of Engelkes*, 127 N.W.2d 111, 113 (Iowa 1964). The exercise of that discretion must be reasonable and not arbitrary. *Id.*

### III. Analysis of Probate Issues

### A. Joint Account

DeZiel testified he opened a joint checking account with Nickles in 2007. Under Iowa law, a joint account implies two separate rights—"a right of survivorship and a right to the proportional share of the funds." *Kettler*, 805 N.W.2d at 823. The right of survivorship (also known as the accretive interest) depends on the continuing agreement of both joint tenants to hold the property in that fashion. *Id.* "Generally, the respective rights of the parties to a joint bank account are determined by the rules of contract law, and the intent of the parties with respect to the joint [bank] account is controlling." *Anderson v. Iowa Dep't of Human Servs.*, 368 N.W.2d 104, 109 (Iowa 1985). On the issue of proportional interest, the law presumes each joint account holder owns an equal share, but a party may rebut that presumption with sufficient evidence that the co-owners intended a different division. *Id.*

The co-owners' intent may be inferred from their purpose for creating the joint account as well as the pattern of deposits and withdrawals. *See In re Estate of Williams*, 515 N.W.2d 552, 554 (Iowa Ct. App. 1994) (finding purpose of placing executor's name on testator's certificate of deposit was to show

ownership of the account, "not for the purposes of business convenience or of facilitating [executor's] ability to assist [testator] with her affairs"); *see also In re Estate of Thomann*, 649 N.W.2d 1, 6 (Iowa 2002); *Schroeder v. Todd*, 86 N.W.2d 101, 104 (Iowa 1957) (holding unequal contributions to joint tenancy is a factor in overcoming presumption that tenants take in equal shares).

In this case, the district court decided Chimbidis rebutted the presumption of equal ownership in the joint checking account.[5] As a result, the $250,000 removed from the account by Nickles's conservator remains in her estate rather than the whole or half of those proceeds from the joint account being paid to DeZiel outside of the estate. On appeal, DeZiel argues the court erred in reaching that result.

In its decision, the district court noted the account "was set up as a matter of convenience" to allow DeZiel to pay expenses for Nickles and "DeZiel never deposited any monies of his own into this account." The court explained:

> DeZiel's testimony revealed that Victoria Nickles wanted Glen DeZiel to pay her bills and told him to take and use the money for that purpose and for his use if needed. Glen DeZiel paid Victoria's bills from this account and never took any of the money for himself. Glen DeZiel advised Victoria that this was her money. No gifts were made by Victoria to Glen DeZiel during her life.

The court pointed out DeZiel did not make any claim to these funds through the conservatorship and the district court approved of the conservator's actions in taking control of these assets. DeZiel did not file his motion to restore the funds until October 2014, three years after Nickles's death. The court emphasized:

---

[5] The district court discussed and rejected three other theories advanced by Chimbidis in resistance to DeZiel's motion. Because we agree with the district court that Chimbidis overcame the presumption of equal ownership, we do not address the other theories.

"Not a word was said regarding the claim to these monies when negotiating a settlement agreement in the will contest involving DeZiel and Chimbidis."

Like the district court, we conclude the proof elicited by Chimbidis overcame the presumption of equal ownership, as well as any accretive interest retained by DeZiel in the funds withdrawn from the joint account. Initially, DeZiel's ability to write checks on the joint account did not alone establish the parties' intent that he was an equal owner. *See Anderson*, 368 N.W.2d at 109 (rejecting determination that ability to write checks on joint account made money available to joint tenant). Moreover, the district court properly considered the source of the funds in the account. *See Schroeder*, 86 N.W.2d at 104.

Most critically, the district court properly relied on the express and implied intent of both Nickles and DeZiel in contracting to be joint tenants. *See Anderson*, 368 N.W.2d at 110; *see also Kettler*, 805 N.W.2d at 823 (discussing intent-based test for overcoming presumption of joint tenancy). Although DeZiel testified Nickles professed a desire for him to withdraw money from the joint account if he ever needed it, on cross examination he acknowledged he never did withdraw funds for his own use. Instead the funds went exclusively for Nickles's expenses. DeZiel testified he rebuffed Nickles's offer to withdraw cash for himself, telling her: "It's your money." DeZiel's own testimony established the joint tenants did not intend a proportional division of the account. In addition, DeZiel's inaction when the conservator transferred $250,000 out of the account signaled his agreement those funds would no longer be held in joint tenancy. *See Kettler*, 805 N.W.2d at 825 (noting intent to terminate rights of survivorship to joint tenancy funds was clear from parties' actions). We agree with the district

court that Chimbidis overcame the rebuttable presumption of joint tenancy in the checking account.

### B. Executor and Attorney Fees

In his capacity as executor, DeZiel argues the district court erred in denying reasonable compensation for the estate's attorney and executor. The estate's attorney sought statutory fees in the amount of $69,582 each—the maximum allowed for ordinary services under the probate code.[6] The district court reduced the award to $39,000 each. The court acknowledged "much time was incurred by the attorney and the executor for the estate in closing the conservatorship and addressing a will contest." But the court was critical of the executor and attorney for not timely addressing inheritance tax issues even when the assets of the estate were "fairly defined."

Section 633.197[7] provides a schedule of the maximum allowable fees for personal representatives of an estate (which includes executors) and section 633.198[8] governs the fees for their attorneys. These statutes require attorney

---

[6] Neither requested fees for extraordinary services in this matter. *See* Iowa Code § 633.199.

[7] Iowa Code section 633.197 states in relevant part:

> Personal representatives shall be allowed such reasonable fees as may be determined by the court for services rendered, but not in excess of the following commissions upon the gross assets of the estate listed in the probate inventory, which shall be received as full compensation for all ordinary services:
>
> > For the first one thousand dollars, six percent.
> > For the overplus between one and five thousand dollars, four percent.
> > For all sums over five thousand dollars, two percent.

[8] Iowa Code section 633.198 provides:

> There shall also be allowed and taxed as part of the costs of administration of estates as an attorney fee for the personal representative's attorney, such reasonable fee as may be determined by

and executor fees for customary services in probate "to be reasonable and not to exceed a fixed percentage of the value of certain assets in the estate." *In re Estate of Randeris*, 523 N.W.2d 600, 606 (Iowa Ct. App. 1994). *Randeris* noted it is "common for the maximum ordinary fee allowed by statute to be requested and approved by the court." *Id.* But the customary procedure does not preclude the probate court from reducing the fee request based on a party's objection that the request is excessive. *Id.* at 607.

> The *Randeris* court explained:
>
> What constitutes reasonable fees depends upon a host of factors, including the competence and efficiency exercised in the estate, size of the estate, actual time devoted to the estate, nature and difficulty of the services performed, fee customarily charged for similar services, results obtained, and experience of the attorney or executor.

*Id.*

Here, Chimbidis objected to the fee requests by the estate's attorney. The objection focused on the attorney's itemized statement revealing a total of 209.8 hours of work at a rate of $190 per hour—for a total value of $39,862. The district court reiterated this calculation in its ruling.[9] The court observed the executor did not provide "an itemization of time spent with respect to the interest of the estate." The court also discussed the "substantial penalty" incurred by the estate for failing to timely file the Iowa inheritance tax return.

---

the court, for services rendered, but not in excess of the schedule of fees herein provided for personal representatives.

[9] The court noted the attorney's itemization included time spent on a personal claim by DeZiel against the estate of Nickles's sister that fell outside his duties as the executor of Nickles's estate.

On appeal, DeZiel faults the district court for "merely using the hourly rate of the attorney and the number of hours thus far put into the estate." DeZiel further contends the district court wrongly focused on the penalty and interests assessed against the estate by the Iowa Department of Revenue. Finally, DeZiel asks our supreme court to overrule prior cases and declare the schedule of fees for ordinary services in sections 633.197 and 633.198 to be reasonable as a matter of law.[10]

Chimbidis counters that the district court "awarded the attorney for the estate an amount that reflected nearly every hour reported by the attorney to have expended in pursuit of estate matters at the hourly rate asserted by attorney Tompkins." He contends the district court properly considered the competency of the representation and the results obtained, justifying a reduction in the attorney fee request. As for the executor fee request, Chimbidis argues the reduction was reasonable given DeZiel's failure to provide evidence to the court of his actual involvement in the estate and his failure to preserve the assets of the estate. In advancing his cross appeal, Chimbidis points to an amount "in excess of $89,000" in interests and penalties assessed against the estate. He contends given these expenses, the attorney and executor fees should be reduced to "zero or at least amounts substantially below the allowances made by the probate court."

In our de novo review, we find substantial evidence supporting the district court's discretionary call to reduce the fee awards to $39,000 for both the

---

[10] Because the supreme court transferred this case to us, such overruling of prior case law is not possible. *See State v. Hastings,* 466 N.W .2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

attorney and the executor. The district court appropriately weighed the size of the estate, the competence and efficiency exercised by the attorney and executor, their time actually devoted to the estate, the nature and difficulty of the services performed, the fees customarily charged by the attorney, and the results obtained. The district court struck a fair balance between the difficulty in handling the will contest and conservatorship issues and the inefficiency and mishandling of the inheritance tax responsibilities.

**AFFIRMED.**